# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ENANTA PHARMACEUTICALS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:22-cv-10967-DJC |
| | ) |
| PFIZER INC. | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT PFIZER INC.'S
## OPENING CLAIM CONSTRUCTION BRIEF

**TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| I. | Introduction | | 1 |
| II. | Factual Background | | 1 |
| | A. | Pfizer's Invention of Nirmatrelvir | 1 |
| | B. | Enanta Seeks To Patent Pfizer's Invention | 3 |
| | C. | The '953 Patent | 4 |
| III. | Legal Standard | | 5 |
| IV. | Argument | | 6 |
| | A. | "Alkyl" (claims 1, 2 & 9) | 6 |
| | B. | "Heteroaryl" (claim 1) | 11 |
| V. | Conclusion | | 13 |

# TABLE OF AUTHORITIES

*Abbott Lab'ys v. Andrx Pharms., Inc.*, 473 F.3d 1196 (Fed. Cir. 2007) .................................. 6, 11

*Bicon, Inc. v. Straumann Co.*, 441 F.3d 945 (Fed. Cir. 2006) .............................................................. 5

*Bioverativ Inc. v. CSL Behring LLC*, 2019 WL 1276030 (D. Del. Mar. 20, 2019) ................... 7, 12

*Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247 (Fed. Cir. 2004) ............................................... 10

*Data Engine Techs. LLC v. Int'l Bus. Machines Corp.*, 2015 WL 3407193 (E.D. Tex. May 27, 2015) ................................................................................................................. 8, 12

*Eli Lilly & Co. v. Eagle Pharms., Inc.*, 2019 WL 1299212 (D. Del. Mar. 21, 2019) ...... 7, 8, 11, 12

*Energy Transp. Grp., Inc. v. William Demant Holding A/S*, 697 F.3d 1342 (Fed. Cir. 2012) ................................................................................................................................. 9

*Every Penny Counts, Inc. v. Am. Express Co.*, 563 F.3d 1378 (Fed. Cir. 2009) ........................ 12

*Intercept Pharms., Inc. v. Apotex Inc.*, 2022 WL 856859 (D. Del. Mar. 23, 2022) ...................... 6

*Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996) ....................................................... 5

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996) ................................................................................................................................. 5

*Medicines Co. v. Mylan, Inc.*, 853 F.3d 1296 (Fed. Cir. 2017) ........................................... 8, 11, 12

*Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364 (Fed. Cir. 2005) ................................. 6, 9

*Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473 (Fed. Cir. 1998) .......................... 7, 12

*Noven Pharms. v. Watson Labs., Inc.*, 2012 U.S. Dist. LEXIS 182486 (D.N.J. Dec. 27, 2012) ................................................................................................................................. 8, 12

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351 (Fed. Cir. 2008) .................. 5

*Old Town Canoe Co. v. Confluence Holdings Corp.*, 448 F.3d 1309 (Fed. Cir. 2006) .................. 5

*Oxygenator Water Techs., Inc. v. Tennant Co.*, 2021 WL 3661587 (D. Minn. Aug. 18, 2021) ............................................................................................................................. 7, 8, 12

*Peters v. Active Mfg. Co.*, 129 U.S. 530 (1889) ............................................................................. 10

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc) ........................................ passim

*Prism Techs. LLC v. Verisign, Inc.*, 512 F. Supp. 2d 174 (D. Del. 2007), *aff'd*, 263 F. App'x 878 (Fed. Cir. 2008) ............................................................................................. 8, 12

*Rembrandt Data Techs., LP v. AOL, LLC,* 641 F.3d 1331 (Fed. Cir. 2011) .............................5, 10

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) ...........................................5

## I. INTRODUCTION

In 2021—after Pfizer Inc. ("Pfizer") revealed the molecular structure of what is now called nirmatrelvir, the active ingredient in the antiviral therapy PAXLOVID™—Plaintiff Enanta Pharmaceuticals, Inc. ("Enanta") applied for and received a patent that it alleges covers Pfizer's breakthrough and game-changing treatment for COVID-19. That patent, having been filed after the disclosure of the molecule it purports to cover, obviously suffers from a host of weaknesses. To paper over some of them, Enanta has proposed, under the guise of claim construction, to rewrite terms in the patent, including the terms "alkyl" and "heteroaryl." But Enanta's proposed constructions contravene the most basic principles of claim construction, improperly supplementing express definitions set forth in the patent specification. Enanta's constructions should therefore be rejected.[1]

## II. FACTUAL BACKGROUND

### A. Pfizer's Invention of Nirmatrelvir

In late 2019, Chinese officials notified the World Health Organization of a mysterious virus causing respiratory illness in patients near the city of Wuhan. Within weeks, that virus—SARS-CoV-2—spread to the furthest corners of the globe. Cities shut down; schools closed; and thousands began dying from the now familiar COVID-19 illness. From the earliest days of the pandemic, Pfizer scientists went to work to save lives. Among their goals was the development of an antiviral therapeutic that would treat patients suffering from COVID-19.

---

[1] Several claims of the patent recite the phrase "A is optionally substituted $C_1$-$C_8$ alkyl." Pfizer contends that that phrase is indefinite. *See* Dkt. No. 39-1, at 5. The parties, however, do not dispute that Pfizer's indefiniteness challenge may appropriately be resolved later in the proceedings. *See* Dkt. No. 40, at 1. The parties therefore agree that Pfizer's indefiniteness challenge is preserved for post-*Markman* resolution.

On July 22, 2020, Pfizer scientists synthesized a molecule internally codenamed PF-07321332.  The molecule showed early promise as an anti-COVID-19 therapeutic.  By spring 2021, Pfizer was ready to share its invention with the world.  At an April 6 meeting of the American Chemical Society, Pfizer's Dr. Dafydd Owen delivered a presentation about Pfizer's discovery of PF-07321332.  During that presentation, he displayed what is called a structural formula of the molecule.  Members of the scientific press paid close attention.  Dr. Bethany Halford of *Chemical & Engineering News*, for example, sketched out PF-07321332's structural formula by hand and immediately tweeted it out to her followers:



Ex. 3.  Industry trade publications likewise ran stories about PF-07321332's chemical structure.  A periodical published by the American Chemical Society, for instance, ran an article entitled, "Pfizer unveils its oral SARS-CoV-2 inhibitor."  Ex. 4.

In the months to follow, the promise of PF-07321332—which came to be known as nirmatrelvir—grew clearer still.  According to an article in the *New England Journal of Medicine*, a treatment regimen pairing nirmatrelvir with the drug ritonavir showed an 89.1% relative risk reduction in COVID-19-related hospitalization or death from any cause by day 28

2

among non-hospitalized adults at high risk for progression to severe disease.  *See* Jennifer Hammond *et al.*, *Oral Nirmatrelvir for High-Risk, Nonhospitalized Adults with Covid-19*, 386 NEW ENG. J. OF MED. 1397, 1406 (Apr. 14, 2022).  Today, a combination therapy made up of nirmatrelvir with ritonavir is publicly available under the brand name PAXLOVID™, the accused product in this litigation.  PAXLOVID™ is a leading treatment for COVID-19 globally, and it has treated roughly 6 million Americans.

### B.     Enanta Seeks To Patent Pfizer's Invention

The Plaintiff, Enanta, does not have a publicly available COVID-19 therapeutic that has treated a single patient.[2]  What it does have is employees who attended Dr. Owen's presentation and/or became aware of its contents soon thereafter.  Although discovery is in its early stages, this much is clear: On November 9, 2021—several months after Dr. Owen's presentation—Enanta filed the patent application that ultimately led to U.S. Patent No. 11,358,953 ("the '953 Patent"), the patent-in-suit.[3]  But because a valid patent must claim a "novel" invention, Enanta needed some reason why its application should be treated as though it had been filed *before* Dr. Owen's presentation.

To that end, Enanta took the position that its patent application was entitled to the effective filing date of an earlier patent application, Provisional Application No. 63/054,048 ("the '048 Provisional"), filed before Dr. Owen's presentation.[4]  That application disclosed various molecules, but not Pfizer's nirmatrelvir, an inconvenient but immutable fact Enanta has

---

[2] Enanta allegedly has a "COVID-19 program" in the works, Dkt. No. 1 (Compl.) ¶ 17, but has assured investors that the patent being used to sue Pfizer is "completely separate from the patent estate covering . . . [Enanta's] ongoing antiviral discovery work for coronaviruses," Ex. 5, at 4.

[3] A copy of the '953 Patent is filed alongside this brief as Exhibit 1.

[4] A copy of the '048 Provisional is filed alongside this brief as Exhibit 2.

taken pains to obscure both in its patent filings and in this case. While Enanta largely based the patent application filed months after Dr. Owen's presentation on the text of the earlier-filed '048 Provisional, it also made certain strategic and crucial revisions in an attempt to expand its disclosure to cover the molecule Pfizer invented and disclosed. For example, Enanta line-edited the definition of the word "substituted" in the '048 Provisional to remove references to one set of chemical structures ("$C_2$-$C_{12}$-alkyl[s]") and, instead, replace them with references to a broader set of structures ("$C_1$-$C_{12}$-alkyl[s]") presumably in the hopes of ensnaring Pfizer's new molecule. As described at greater length below, Enanta now proposes to cover its tracks by suggesting that "$C_2$-$C_{12}$-alkyl[s]" and "$C_1$-$C_{12}$-alkyl[s]" are somehow synonymous.

### C. The '953 Patent

The '953 Patent contains one independent claim and nine dependent claims. Both claim terms selected for construction appear in at least the independent claim. That claim recites:

> 1. A compound represented by Formula (VI-6a),
>
> (VI-6a)
>
> [structural formula]
>
> or a pharmaceutically acceptable salt thereof, wherein
> X is —CN; and
> A is optionally substituted $C_1$-$C_8$ alkyl or optionally substituted heteroaryl.

The claim depicts something that resembles a structural formula. In it, however, there are two variables "X" and "A." The former is clear enough—it is defined as a carbon atom ("C") bonded to a nitrogen atom ("N"). The "A" variable is a different story. Claim 1 defines "A" to mean an "optionally substituted $C_1$-$C_8$ alkyl or optionally substituted heteroaryl." It is that limitation that contains the claim terms that the parties have selected for construction.

## III.     LEGAL STANDARD

Claim construction is a question of law, *see Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996), and requires an "inquiry into how a person of ordinary skill in the art understands a claim term" at the time of the invention, *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc).  Because the claims of a patent "define the precise scope of a claimed invention," *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006), their construction forms an important piece of the infringement analysis.  "The purpose of claim construction is to determine the meaning and scope of the patent claims asserted to be infringed," *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) (brackets and internal quotation marks omitted), not to shore up deficiencies in the patent.  Critically for present purposes, the Federal Circuit "repeatedly and consistently has recognized that courts may not redraft claims, whether to make them operable or to sustain their validity." *Rembrandt Data Techs., LP v. AOL, LLC,* 641 F.3d 1331, 1339 (Fed. Cir. 2011) (internal quotation marks omitted).

Claim construction begins with an analysis of the words of claims.  *E.g.*, *Old Town Canoe Co. v. Confluence Holdings Corp.*, 448 F.3d 1309, 1315 (Fed. Cir. 2006).  Claim terms are "read in view of the specification," which is the "single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (internal quotation marks omitted).  The claim language, the specification, and the prosecution history are all examples of so-called "intrinsic" evidence as to the claim terms' meaning.  *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).  Although the Federal Circuit has "emphasized the importance of intrinsic evidence in claim construction, [it] ha[s] also authorized district courts to rely on extrinsic evidence," *Phillips*, 415 F.3d at 1317, including expert testimony, *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996).

The Federal Circuit has "recognize[d] that the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess." *Phillips*, 415 F.3d at 1316. "In such cases, the inventor's lexicography governs." *Id.* To act as a lexicographer, patentees must "clearly express" their intent to do so. *Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1370 (Fed. Cir. 2005).

## IV.  ARGUMENT

The parties have identified two terms for construction—*i.e.*, "alkyl" and "heteroaryl." For both terms, the '953 Patent's specification provides an express definition. Pfizer submits that those definitions should control.

### A.  "Alkyl" (claims 1, 2 & 9)

| Claim Term | Enanta's Proposed Construction | Pfizer's Proposed Construction |
|---|---|---|
| "alkyl" (Claims 1, 2, 9) | The term "alkyl" means saturated, straight- or branched-chain hydrocarbon radicals. "$C_1$-$C_4$ alkyl," "$C_1$-$C_6$ alkyl," "$C_1$-$C_8$ alkyl," "$C_2$-$C_{12}$ alkyl," "$C_2$-$C_4$ alkyl," or "$C_3$-$C_6$ alkyl," refer to alkyl groups containing from one to four, one to six, one to eight, one to twelve, 2 to 4 and 3 to 6 carbon atoms respectively. Examples of $C_1$-$C_8$ alkyl radicals include, but are not limited to, methyl, ethyl, propyl, isopropyl, *n*-butyl, *tert*-butyl, neopentyl, n-hexyl, heptyl and octyl radicals. | The term "alkyl" means saturated, straight- or branched-chain hydrocarbon radicals. |

It is black-letter law that where the patent expressly defines a claim term, that definition governs. *Phillips*, 415 F.3d at 1316. The '953 Patent contains an express definition of "alkyl." Specifically, the '953 Patent explains that "[t]he term 'alkyl' as used herein, refers to saturated, straight- or branched-chain hydrocarbon radicals." '953 Patent, Col. 68, *ll.* 1–2. That language is unmistakably definitional. *See, e.g.*, *Abbott Lab'ys v. Andrx Pharms., Inc.*, 473 F.3d 1196, 1210 (Fed. Cir. 2007) (noting that the phrase "'[p]harmaceutically acceptable' as used herein, means . . ." was language that "unambiguously provide[d] [a] definition[]"); *Intercept Pharms., Inc. v. Apotex Inc.*, 2022 WL 856859, at *3 (D. Del. Mar. 23, 2022) ("[T]he phrase 'as used

6

herein' has been recognized as definitional in a wide host of Federal Circuit and district court cases."). Thus, the law requires that "alkyl" be construed in accordance with that definition. *See Phillips*, 415 F.3d at 1316. Those basic principles warrant adopting Pfizer's proposed construction, which tracks the wording of the '953 Patent. *Compare* Dkt. No. 40-1, at 3, *with* '953 Patent, Col. 68, *ll.* 1–2.

Enanta, for its part, does not meaningfully dispute Pfizer's contention. It agrees that the term "alkyl" is defined and includes the patent's definition as part of its construction. However, Enanta argues that two *other* sentences in the specification, which manifestly address other terms and concepts and are not part of the definition of the term "alkyl," also should be included in the Court's construction of that term. Enanta is wrong. "When the specification explains and defines a term used in the claims, without ambiguity or incompleteness, there is no need to search further for the meaning of the term." *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1478 (Fed. Cir. 1998).

Enanta may try to justify its construction by noting that the sentences that it seeks to interpolate appear in the specification alongside the definition of "alkyl." That changes nothing. The simple fact that Enanta's two sentences appear *next* to a definition does not make them part of the definition. That is because "one sentence might clearly be meant as a definition while the next might serve some other purpose, like identifying examples of the defined term or explaining how the defined term works in practice." *Oxygenator Water Techs., Inc. v. Tennant Co.*, 2021 WL 3661587, at *8 (D. Minn. Aug. 18, 2021).[5]

---

[5] *See also, e.g.*, *Eli Lilly & Co. v. Eagle Pharms., Inc.*, 2019 WL 1299212, at *5 (D. Del. Mar. 21, 2019) (excluding language from claim construction that was "not definitional but only exemplary" (citing *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1326 (Fed. Cir. 2012)); *Bioverativ Inc. v. CSL Behring LLC*, 2019 WL 1276030, at *8 (D. Del. Mar. 20, 2019) (finding that "[t]he first sentence of the paragraph [from the specification] provides a definition and is clearly

7

Here, the disputed sentences "serve some other purpose." *Id.* The first disputed sentence, again, reads, "'$C_1$-$C_4$ alkyl,' '$C_1$-$C_6$ alkyl,' '$C_1$-$C_8$ alkyl,' '$C_2$-$C_{12}$ alkyl,' '$C_2$-$C_4$ alkyl,' or '$C_3$-$C_6$ alkyl,' refer to alkyl groups containing from one to four, one to six, one to eight, one to twelve, 2 to 4 and 3 to 6 carbon atoms respectively." This sentence cannot define "alkyl" for a very simple reason: It does not purport to do so. Instead, it purports to discuss six *other* phrases—*i.e.*, "$C_1$-$C_4$ alkyl," "$C_1$-$C_6$ alkyl," "$C_1$-$C_8$ alkyl," "$C_2$-$C_{12}$ alkyl," "$C_2$-$C_4$ alkyl," and "$C_3$-$C_6$ alkyl." In that respect, the sentence sets forth, at most, a confusing elaboration upon an already complete definition of "alkyl." *See* Feldman Decl. ¶ 32; *see also, e.g.*, *Oxygenator Water Techs.*, 2021 WL 3661587, at *8; *see also, e.g.*, *Eli Lilly*, 2019 WL 1299212, at *5.

Even had the '953 Patent's inventors regarded these six illustrations as in some sense definitional, that would change nothing. Language in the specification cannot define a claim term without a "*clear* expression of intent." *Medicines Co. v. Mylan, Inc.*, 853 F.3d 1296, 1306 (Fed. Cir. 2017) (emphasis added). Here, the term identified for construction—*i.e.*, "alkyl"—is not one of the six terms arguably defined by the language that Enanta seeks to add to the construction of "alkyl." *See* '953 Patent, Col. 68, *ll.* 2–6 (addressing "$C_1$-$C_4$ alkyl," "$C_1$-$C_6$ alkyl," "$C_1$-$C_8$ alkyl," "$C_2$-$C_{12}$ alkyl," "$C_2$-$C_4$ alkyl," or "$C_3$-$C_6$ alkyl" but not the unmodified word "alkyl"). Instead, "alkyl" is, at best, a common thread throughout the six terms. A "clear

---

lexicography" but that the following two sentences "are clearly exemplary, rather than definitional, and not lexicography"); *Data Engine Techs. LLC v. Int'l Bus. Machines Corp.*, 2015 WL 3407193, at *3–4 (E.D. Tex. May 27, 2015) (construing claim term in accordance with the "[t]he definitional aspect of [its] glossary entry" as opposed to the "remainder" which "merely describes [the term's] purpose and effects"); *Noven Pharms. v. Watson Labs., Inc.*, 2012 U.S. Dist. LEXIS 182486, at *11 (D.N.J. Dec. 27, 2012) (finding that "an explicit one sentence definition . . . ends the inquiry"); *Prism Techs. LLC v. Verisign, Inc.*, 512 F. Supp. 2d 174, 184 (D. Del. 2007) ("[T]he Court concludes that the second sentence explains how an untrusted network acts upon a client-server application, while the first sentence contains the patentee's definition of the term."), *aff'd*, 263 F. App'x 878 (Fed. Cir. 2008).

expression of intent" cannot be present where the supposedly lexicographical terminology might address something other than "alkyl." *See, e.g.*, *Merck*, 395 F.3d at 1370–71 (finding that language did not redefine "about" where it could be read as explaining the meaning of a different phrase).

On top of that, Enanta's proposed construction would muddle the '953 Patent's otherwise clear definition of "alkyl." The first disputed sentence is facially illogical. It confusingly posits that "**$C_2$**-$C_{12}$ alkyl" refers to "alkyl group[] containing from . . . **one** to twelve . . . carbon atoms." Dkt. No. 40-1, at 3 (emphasis added). But in organic chemistry—as everywhere else in life— "2" does not mean "one," *see* Feldman Decl. ¶ 20, and to conclude otherwise is to cloud the distinction between methanol (a poison, having one carbon atom) and ethanol (what is on the menu at happy hour, having two carbon atoms), *see id.* ¶ 33; *see also id.* (noting that a single atom likewise distinguishes carbon monoxide—*i.e.*, "a poisonous gas at low concentrations"— from carbon dioxide, *i.e.*, "what we exhale when we breathe").

Worse than illogical, Enanta's construction is also inconsistent with other language in the '953 Patent. The patent—like Enanta's proposed construction—also refers to a "$C_2$-$C_4$ alkyl," which it defines as an "alkyl group[] containing from . . . 2 to 4 . . . carbon atoms." In other words, to accept Enanta's construction would be to insinuate that, sometimes, "$C_2$" means "two carbons" but, other times, it means "one carbon." Nothing in the law of claim construction obligates the Court to adopt such an absurd definition. *See Phillips*, 415 F.3d at 1314 ("[C]laim terms are normally used consistently throughout the patent"); *see also, e.g.*, *Energy Transp. Grp., Inc. v. William Demant Holding A/S*, 697 F.3d 1342, 1349–50 (Fed. Cir. 2012).

Enanta's proposed construction may be born of concern about the '953 Patent's validity. As noted, Enanta filed its patent application after Pfizer publicly displayed nirmatrelvir's

structure to the world. When Enanta did so, it assiduously revised its application's definition of "substituted," presumably in hopes of teeing up a patent-infringement lawsuit against Pfizer. But that choice entailed a risk. Unless Enanta could establish that its '953 Patent should be deemed effectively filed *before* Dr. Owen's presentation, Enanta's assertion of infringement by nirmatrelvir would doom its patent under the venerable doctrine that "[t]hat which infringes, if later, would anticipate, if earlier." *Peters v. Active Mfg. Co.*, 129 U.S. 530, 537 (1889). Enanta therefore took the position that its '953 Patent could "claim[] priority to the '048 [Provisional] Application," filed in July 2020. Dkt. No. 1 (Compl. ¶ 21). But, as Enanta presumably recognizes, that argument will fail if claim 1 of '953 Patent includes "new matter" absent from the '048 Provisional. *See, e.g.*, *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1259 (Fed. Cir. 2004). Thus, Enanta presumably worries that, by deleting "$C_2$-$C_{12}$-alkyl" in favor of "$C_1$-$C_{12}$-alkyl," it imbued the claims with forbidden new matter, which it now seeks to obscure by, *sub silentio*, attempting to redefine "$C_2$" to mean "$C_1$." But strategic line-editing of the patent claims—much less of the specification—is not the purpose of claim construction. *See Rembrandt,* 641 F.3d at 1339.[6]

Nor should the Court allow Enanta's effort to graft the second sentence following the patent's definition of "alkyl" onto the construction of that term. The pertinent sentence reads, "[e]xamples of $C_1$-$C_8$ alkyl radicals include, but are not limited to, methyl, ethyl, propyl, isopropyl, *n*-butyl, *tert*-butyl, neopentyl, n-hexyl, heptyl and octyl radicals." Dkt. No. 40-1, at 3. Like the first sentence, it is not definitional. It unambiguously sets forth a list of "[e]xamples" of

---

[6] Enanta has left little doubt that its aim is to paper over its new-matter problem. Until recently, Enanta proposed a construction of "substituted" that was, in Enanta's telling, meant to "mirror the provisional," Ex. 6, at 2, even though that meant departing from the '953 Patent's text, *see* Dkt. No. 39-1, at 2–4.

$C_1$-$C_8$ alkyls. It plainly departs from the "linguistic formula used by the patentee to signal the designation of other defined terms," *Medicines Co.*, 853 F.3d at 1306, *i.e.*, "as used herein." In other words, it is "not definitional but only exemplary." *Eli Lilly*, 2019 WL 1299212, at *5.

The Court should therefore reject Enanta's proposed construction of "alkyl" and hold Enanta to what the inventors actually wrote in the specification—*i.e.*, that, "alkyl" means "saturated, straight- or branched-chain hydrocarbon radicals." '953 Patent, Col. 68, *ll.* 1–2.

### B. "Heteroaryl" (claim 1)

| Claim Term | Enanta's Proposed Construction | Pfizer's Proposed Construction |
|---|---|---|
| "heteroaryl." (Claim 1) | The term "heteroaryl" means a mono- or polycyclic aromatic radical having one or more ring atom selected from S, O and N; and the remaining ring atoms are carbon, wherein any N or S contained within the ring may be optionally oxidized. Heteroaryl includes, but is not limited to, pyridinyl, pyrazinyl, pyrimidinyl, pyrrolyl, pyrazolyl, imidazolyl, thiazolyl, oxazolyl, isooxazolyl, thiadiazolyl, oxadiazolyl, thiophenyl, furanyl, quinolinyl, isoquinolinyl, benzimidazolyl, benzoxazolyl, quinoxalinyl. A polycyclic heteroaryl can comprise fused rings, covalently attached rings or a combination thereof. | The term "heteroaryl" means a mono- or polycyclic aromatic radical having one or more ring atom selected from S, O and N; and the remaining ring atoms are carbon, wherein any N or S contained within the ring may be optionally oxidized. |

Claim 1 of the '953 Patent refers to a "heteroaryl." As with "alkyl," the '953 Patent contains an express definition of "heteroaryl." Specifically, the patent recites, "[t]he term 'heteroaryl,' as used herein, refers to a mono- or polycyclic aromatic radical having one or more ring atom selected from S, O and N; and the remaining ring atoms are carbon, wherein any N or S contained within the ring may be optionally oxidized." '953 Patent, Col. 67, *ll.* 55–59. As with "alkyl," the '953 Patent's express definition of "heteroaryl" governs that term's meaning as a matter of controlling law. *See Phillips*, 415 F.3d at 1316; *see also Abbott Lab'ys*, 473 F.3d at 1210. Pfizer's proposed construction is substantively identical to the patent's definition.

Enanta does not dispute that Pfizer's proposed construction forms part of the definition of "heteroaryl." It agrees that the '953 Patent defines "heteroaryl." Enanta, instead, claims that two

additional sentences also form part of the definition of "heteroaryl." Specifically, Enanta would add to the definition that "[h]eteroaryl includes, but is not limited to, pyridinyl, pyrazinyl, pyrimidinyl, pyrrolyl, pyrazolyl, imidazolyl, thiazolyl, oxazolyl, isooxazolyl, thiadiazolyl, oxadiazolyl, thiophenyl, furanyl, quinolinyl, isoquinolinyl, benzimidazolyl, benzoxazolyl, quinoxalinyl" and that "[a] polycyclic heteroaryl can comprise fused rings, covalently attached rings or a combination thereof." Dkt. No. 40-1, at 3. But, as with "alkyl," this surplusage addresses terms and concepts outside the definition of "heteroaryl." *See, e.g.*, *Medicines Co.*, 853 F.3d at 1306; *Multiform Desiccants*, 133 F.3d at 1478; *Eli Lilly*, 2019 WL 1299212, at *5; *Oxygenator Water Techs.*, 2021 WL 3661587, at *8; *Noven Pharms.*, 2012 U.S. Dist. LEXIS 182486, at *11; *Prism Techs.*, 512 F. Supp. 2d at 184; *Bioverativ*, 2019 WL 1276030, at *8; *Data Engine Techs.*, 2015 WL 3407193, at *3–4.

      Nothing in the record to date suggests that the parties have any substantive dispute regarding the scope of the claim term "heteroaryl." Rather, Pfizer surmises that Enanta proposes its "heteroaryl" construction merely for consonance with its construction of "alkyl." But "[t]he purpose of claim construction is to determine the meaning and scope of the patent claims that the plaintiff alleges have been infringed," *Every Penny Counts, Inc. v. Am. Express Co.*, 563 F.3d 1378, 1381 (Fed. Cir. 2009), not to shore up other weaknesses in other constructions. It thus should not be engrafted onto the '953 Patent's otherwise clear express definition.

## V. CONCLUSION

For the foregoing reasons, the Court should adopt Pfizer's proposed constructions.

Dated:  January 19, 2023

Respectfully submitted,

 */s/Thomas H.L. Selby*

| | |
|---|---|
| Lee Carl Bromberg (BBO # 058480) | Thomas H.L. Selby (*pro hac vice*) |
| Erik Paul Belt (BBO # 558620) | David I. Berl (*pro hac vice*) |
| Wyley Proctor (BBO # 666613) | Christopher A. Yeager (*pro hac vice*) |
| MCCARTER & ENGLISH, LLP | Julie L. Tavares (*pro hac vice*) |
| 265 Franklin Street | WILLIAMS & CONNOLLY LLP |
| Boston, MA 02110 | 680 Maine Avenue, SW |
| P: 617.449.6500 | Washington, DC 20024 |
| F: 617.607.9200 | (202) 434-5000 |
| lbromberg@mccarter.com | (202) 434-5029 (Facsimile) |
| ebelt@mccarter.com | tselby@wc.com |
| wproctor@mccarter.com | dberl@wc.com |
| | cyeager@wc.com |
| | jtavares@wc.com |

*Attorneys for Defendant and Counterclaim-Plaintiff Pfizer Inc.*

## CERTIFICATE OF SERVICE

I, Lee Carl Bromberg, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 19, 2023.

 */s/ Lee Carl Bromberg*
 Lee Carl Bromberg