UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

)
)
ENANTA PHARMACEUTICALS, INC.,    )
)
        Plaintiffs,    )
)
        v.    )
)   Case No. 22-cv-10967-DJC
)
PFIZER, INC.,    )
)
        Defendants.    )
)
)

**MEMORANDUM AND ORDER**

**CASPER, J.**

                                                                                                                            **May 5, 2023**
                                                                                                                   *Revised June 15, 2023*

**I.    Introduction**

        Plaintiff Enanta Pharmaceuticals, Inc. ("Enanta") alleges that Defendant Pfizer, Inc ("Pfizer") infringes certain claims of United States Patent No. 11,358,953 (the "'953 Patent").[1]  D. 1.  The parties now seek construction of two disputed terms in the '953 Patent's claims.  D. 40; D. 41; D. 42.  After reviewing the parties' claim construction briefs and conducting a Markman hearing, D. 60, 66, the Court construes the disputed terms follows.

---

[1] The '953 Patent has been attached to multiple filings by the party.  D. 1-1; D. 41-2; D. 42-1.  For consistency, the Court uses '953 Patent as the citation.

1

**II.    Factual Background and Patents-in-Suit**

Enanta seeks to enforce its '953 Patent over "Functionalized Peptides as Antiviral Agents." D. 1 ¶ 1. Enanta filed the patent application for the '953 Patent on November 9, 2021, but claimed priority to the July 20, 2020 filing date of U.S. Provisional Patent Application No. 63/054,048 (the "'048 Application"). Id. ¶¶ 20–21; '953 Patent, at [21], [22], [60]. On June 14, 2022, the '953 Patent was issued. D. 1 ¶ 22; '953 Patent, at [45].

In short, the '953 Patent claims a group of peptides sharing a similar molecular structure, which can be used as an antiviral treatment against coronaviruses. See '953 Patent at [57]. On April 6, 2021, one of Pfizer's scientists publicly disclosed the structural formula of nirmatrelvir, one of the two components in Paxlovid, Pfizer's then-forthcoming covid-19 treatment. D. 41 at 6. Enanta alleges that nirmatrelvir falls within the group of molecules covered by the '953 patent. D. 1 ¶¶ 31–38, 45–47.

**III.   Procedural History**

Enanta instituted this action on June 21, 2022. Id. Pfizer asserted counterclaims for a declaration of noninfringement and invalidity. D. 22 at 11-12. After the parties submitted claim construction briefs, D. 39–D. 42, D. 46, D. 47, the Court held a Markman hearing on April 6, 2023 and took the matter under advisement. D. 60.

**IV.    Standard of Review**

The construction of disputed claim terms is a question of law. Markman v. Westview Instruments, 517 U.S. 370, 372 (1996). The Court generally must give claim terms their "ordinary and customary meaning," i.e., "the meaning that the term would have to a person of ordinary skill in the art in question at the time of . . . the effective filing date of the patent application." Phillips v. AWH Corp., 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc). This Court "primarily rel[ies] on[] the intrinsic evidence, including the claims themselves, the specification, and the prosecution

2

history of the patent, which is usually dispositive." Personalized Media Commc'ns, LLC v. Apple Inc., 952 F.3d 1336, 1340 (Fed. Cir. 2020). The Court may also consider extrinsic evidence "including expert and inventor testimony, dictionaries, and learned treatises." Phillips, 415 F.3d at 1317.

### A. The Claims

The analysis begins with the language of the claim which "define[s] the invention to which the patentee is entitled the right to exclude." Id. at 1312 (quoting Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1115 (Fed. Cir. 2004)). "[T]he context in which a term is used in the asserted claim can be highly instructive." Id. at 1314. Courts may find that the claim itself provides the means for construing the term where, for example, the claim term is used consistently throughout the patent. Id. In that case, "the meaning of a term in one claim is likely the meaning of that same term in another." Abbott GmbH & Co., KG v. Centocor Ortho Biotech, Inc., No. 09-11340-FDS, 2011 WL 948403, at *3 (D. Mass. Mar. 15, 2011) (citing Phillips, 415 F.3d at 1314). Furthermore, "the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." Phillips, 415 F.3d at 1315.

### B. The Specification

Nevertheless, the claims "do not stand alone" but "are part of a fully integrated written instrument, consisting principally of a specification," which "is always highly relevant to the claim construction analysis." Id. (citation omitted). "Usually, [the specification] is dispositive; it is the single best guide to the meaning of a disputed term." Id. (quoting Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996)). "[T]he scope and outer boundary of claims is set by the patentee's description of his invention" and, therefore, "claims cannot be of broader scope than the invention that is set forth in the specification." On Demand Mach. Corp. v. Ingram Indus.,

3

Inc., 442 F.3d 1331, 1338, 1340 (Fed. Cir. 2006); see Phillips, 415 F.3d at 1315–17, 1323. The Court must "us[e] the specification [only] to interpret the meaning of a claim," and must be careful not to "import[ ] limitations from the specification into the claim." Phillips, 415 F.3d at 1323. This standard may "be a difficult one to apply in practice," id., but "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." Id. at 1316 (citing Renishaw PLC v. Marposs Societa' per Azioni, 158 F.3d 1243, 1250 (Fed. Cir. 1998)).

### C. The Prosecution History

After the claims themselves and the specification, "a court should also consider the patent's prosecution history, if it is in evidence." Id. at 1317 (quoting Markman, 52 F.3d at 980) (internal quotation marks omitted). "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." Id. (citing Vitronics, 90 F.3d at 1582–83). The prosecution history should be given less weight than the claims and the specification, however, because "it often lacks [ ] clarity . . . and thus is less useful for claim construction purposes." Id.

### D. The Patentee's Lexicography

The claim terms may depart from their ordinary and customary meaning in only two instances: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." Thorner v. Sony Comput. Ent. Am. LLC, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (citation omitted). "To act as its own lexicographer, a patentee must clearly set forth a definition of the disputed claim term other than its plain and ordinary meaning and must clearly express an

4

intent to redefine the term." Apple Inc. v. Wi-LAN Inc., 25 F.4th 960, 967 (Fed. Cir. 2022) (quoting Hill-Rom Servs., Inc. v. Stryker Corp., 755 F.3d 1367, 1371 (Fed. Cir. 2014)).

### E. Extrinsic Evidence

Courts may also consider extrinsic sources, which "can help educate the court regarding the field of the invention and can help the court determine what a person of ordinary skill in the art would understand claim terms to mean." Phillips, 415 F.3d at 1319. In particular, dictionaries and treatises can assist the court in understanding the underlying technology and "in determining the meaning of particular terminology to those of skill in the art of the invention." Id. at 1318. However, extrinsic evidence is "secondary to the intrinsic evidence." Grace Instrument Indus., LLC v. Chandler Instruments Co., LLC, 57 F.4th 1001, 1008 (Fed. Cir. 2023) (quoting Cont'l Cirs. LLC v. Intel Corp., 915 F.3d 788, 795 (Fed. Cir. 2019)). "If the meaning of a claim term is clear from the intrinsic evidence, there is no reason to resort to extrinsic evidence." Grace Instrument, 57 F.4th at 1008 (quoting Seabed Geosolutions (US) Inc. v. Magseis FF LLC, 8 F.4th 1285, 1287 (Fed. Cir. 2021)).

### V. Discussion

The '953 Patent consists of one independent claim (Claim 1) and several dependent claims. The Amended Joint Claim Construction Statement, D. 40, reflects the parties' agreement upon the meaning of two terms appearing in independent Claim 1 and dependent Claims 2 and 9.

### A. Agreed Upon Terms

| Term | Agreed Upon Construction |
|---|---|
| "substituted" | The term "substituted" refers to substitution by independent replacement of one, two, or three or more of the hydrogen atoms with substituents including, but not limited to, —F, —Cl, —Br, —I, —OH, $C_1$-$C_{12}$- |

alkyl; $C_2$-$C_{12}$-alkenyl, $C_2$-$C_{12}$-alkynyl, —$C_3$-$C_{12}$-cycloalkyl, protected hydroxy, —$NO_2$, —$N_3$, —CN, —$NH_2$, protected amino, oxo, thioxo, —NH—$C_1$-$C_{12}$-alkyl, —NH—$C_2$-$C_8$-alkenyl, —NH—$C_2$-$C_8$-alkynyl, —NH—$C_3$-$C_{12}$-cycloalkyl, —NH-aryl, —NH-heteroaryl, —NH— heterocycloalkyl, -dialkylamino, -diarylamino, -diheteroarylamino, —O—$C_1$-$C_{12}$-alkyl, — O—$C_2$-$C_8$-alkenyl, —O—$C_2$-$C_8$-alkynyl, —O—$C_3$-$C_{12}$-cycloalkyl, —O- aryl, —O-heteroaryl, —O— heterocycloalkyl, —C(O)—$C_1$-$C_{12}$-alkyl, —C(O)—$C_2$-$C_8$-alkenyl, —C(O)—$C_2$-$C_8$-alkynyl, —C(O)—$C_3$-$C_{12}$-cycloalkyl, —C(O)-aryl, —C(O)-heteroaryl, —C(O)-heterocycloalkyl, —$CONH_2$, —CONH—$C_1$-$C_{12}$-alkyl, —CONH—$C_2$-$C_8$-alkenyl, —CONH—$C_2$-$C_8$-alkynyl, —CONH—$C_3$-$C_{12}$-cycloalkyl, —CONH-aryl, —CONH-heteroaryl, —CONH-heterocycloalkyl, —$OCO_2$—$C_1$-$C_{12}$- alkyl, —$OCO_2$—$C_2$-$C_8$-alkenyl, —$OCO_2$—$C_2$-$C_8$-alkynyl, —$OCO_2$— $C_3$-$C_{12}$-cycloalkyl, —$OCO_2$-aryl, —$OCO_2$-heteroaryl, —$OCO_2$- heterocycloalkyl, —$CO_2$—$C_1$-$C_{12}$ alkyl, —$CO_2$—$C_2$-$C_8$ alkenyl, — $CO_2$—$C_2$-$C_8$ alkynyl, $CO_2$—$C_3$-$C_{12}$-cycloalkyl, —$CO_2$-aryl, $CO_2$-heteroaryl, $CO_2$-heterocyloalkyl, —$OCONH_2$, —OCONH—$C_1$-$C_{12}$- alkyl, —OCONH—$C_2$-$C_8$-alkenyl, —OCONH—$C_2$-$C_8$-alkynyl, — OCONH—$C_3$-$C_{12}$-cycloalkyl, —OCONH-aryl, —OCONH-heteroaryl, —OCONH-heterocyclo-alkyl, —NHC(O)H, —NHC(O)—$C_1$-$C_{12}$-alkyl, —NHC(O)—$C_2$-$C_8$-alkenyl, —NHC(O)—$C_2$-$C_8$-alkynyl, —NHC(O)— $C_3$-$C_{12}$-cycloalkyl, —NHC(O)-aryl, —NHC(O)-heteroaryl, —NHC(O)- heterocyclo-alkyl, —$NHCO_2$—$C_1$-$C_{12}$-alkyl, —$NHCO_2$—$C_2$-$C_8$-alkenyl, —$NHCO_2$—$C_2$-$C_8$-alkynyl, —$NHCO_2$—$C_3$-$C_{12}$-cycloalkyl, —$NHCO_2$- aryl, —$NHCO_2$-heteroaryl, —

| |
|---|
| $NHCO_2$-heterocycloalkyl, —NHC(O)$NH_2$, —NHC(O)NH—$C_1$-$C_{12}$-alkyl, —NHC(O)NH—$C_2$-$C_8$-alkenyl, —NHC(O)NH—$C_2$-$C_8$-alkynyl, —NHC(O)NH—$C_3$-$C_{12}$-cycloalkyl, —NHC(O)NH-aryl, —NHC(O)NH-heteroaryl, —NHC(O)NH- heterocycloalkyl, NHC(S)$NH_2$, —NHC(S)NH—$C_1$-$C_{12}$-alkyl, —NHC(S)NH—$C_2$-$C_8$-alkenyl, —NHC(S)NH—$C_2$-$C_8$-alkynyl, — NHC(S)NH—$C_3$-$C_{12}$-cycloalkyl, —NHC(S)NH-aryl, —NHC(S)NH-heteroaryl, —NHC(S)NH— heterocycloalkyl, —NHC(NH)$NH_2$, —NHC(NH)NH—$C_1$-$C_{12}$-alkyl, —NHC(NH)NH—$C_2$-$C_8$-alkenyl, —NHC(NH)NH—$C_2$-$C_8$-alkynyl, —NHC(NH)NH—$C_3$-$C_{12}$-cycloalkyl,, —NHC(NH)NH-aryl, —NHC(NH)NH-heteroaryl —NHC(NH)NH-heterocycloalkyl, —NHC(NH)—$C_1$-$C_{12}$-alkyl, —NHC(NH)—$C_2$-$C_8$- alkenyl, —NHC(NH)—$C_2$-$C_8$-alkynyl, —NHC(NH)—$C_3$-$C_{12}$ cycloalkyl, —NHC(NH)-aryl, —NHC(NH)-heteroaryl, —NHC(NH)- heterocycloalkyl, —C(NH)NH—$C_1$-$C_{12}$-alkyl, —C(NH)NH—$C_2$-$C_8$- alkenyl, —C(NH)NH—$C_2$-$C_8$-alkynyl, —C(NH)NH—$C_3$-$C_{12}$-cycloalkyl, —C(NH)NH-aryl, —C(NH)NH-heteroaryl, —C(NH)NH- heterocycloalkyl, —S(O)—$C_1$-$C_{12}$-alkyl, —S(O)—$C_2$-$C_8$-alkenyl, — S(O)—$C_2$-$C_8$-alkynyl, —S(O)—$C_3$-$C_{12}$-cycloalkyl, —S(O)-aryl, — S(O)— heteroaryl, —S(O)-heterocycloalkyl, —$SO_2NH_2$, —$SO_2$NH— $C_1$-$C_2$-alkyl, —$SO_2$NH—$C_2$-$C_8$-alkenyl, —$SO_2$NH—$C_2$-$C_8$-alkynyl, — $SO_2$NH—$C_3$-$C_{12}$-cycloalkyl, —$SO_2$NH-aryl, —$SO_2$NH-heteroaryl, — $SO_2$NH-heterocycloalkyl, —$NHSO_2$—$C_1$-$C_{12}$-alkyl, —$NHSO_2$—$C_2$-$C_8$- alkenyl, —$NHSO_2$—$C_2$-$C_8$-alkynyl, —$NHSO_2$—$C_3$-$C_{12}$-cycloalkyl, — $NHSO_2$-aryl, —$NHSO_2$-heteroaryl, —$NHSO_2$- |

7

| | |
|---|---|
| | heterocycloalkyl, —CH$_2$NH$_2$, —CH$_2$SO$_2$CH$_3$, -aryl, -arylalkyl, -heteroaryl, -heteroarylalkyl, -heterocycloalkyl, —C$_3$-C$_{12}$-cycloalkyl, polyalkoxyalkyl, polyalkoxy, -methoxymethoxy, -methoxyethoxy, —SH, —S—C$_1$-C$_{12}$-alkyl, —S—C$_2$-C$_8$-alkenyl, —S—C$_2$-C$_8$-alkynyl, —S—C$_3$-C$_{12}$-cycloalkyl, —S-aryl, —S-heteroaryl, —S-heterocycloalkyl, or methylthio-methyl. In certain embodiments the substituents are independently selected from halo, preferably Cl and F; C$_1$-C$_4$-alkyl, preferably methyl and ethyl; halo-C$_1$-C$_4$-alkyl, such as fluoromethyl, difluoromethyl, and trifluoromethyl; C$_2$-C$_4$-alkenyl; halo-C$_2$-C$_4$-alkenyl; C$_3$-C$_6$-cycloalkyl, such as cyclopropyl; C$_1$-C$_4$-alkoxy, such as methoxy and ethoxy; halo-C$_1$-C$_4$-alkoxy, such as fluoromethoxy, difluoromethoxy, and trifluoromethoxy, —CN; —OH; NH$_2$; C$_1$-C$_4$-alkylamino; di(C$_1$-C$_4$-alkyl)amino; and N0$_2$. It is understood that the aryls, heteroaryls, alkyls, and the like can be further substituted. In some cases, each substituent in a substituted moiety is additionally optionally substituted with one or more groups, each group being independently selected from C$_1$-C$_4$-alkyl; —CF$_3$, —OCH$_3$, —OCF$_3$, —F, —Cl, —Br, —I, —OH, —NO$_2$, —CN, and —NH$_2$. Preferably, a substituted alkyl group is substituted with one or more halogen atoms, more preferably one or more fluorine or chlorine atoms. |
| "optionally substituted" | The term "optionally substituted" means that the referenced group may be unsubstituted (no substituents) or substituted, including with one or more additional groups individually and independently selected from groups described herein. |

These agreed-upon constructions match the definitions provided in the patent's specification. '953 Patent col. 69 l. 61 (defining "substituted"), col. 71 l. 18 (defining "optionally substituted"). The

8

Court concludes the agreed-upon constructions are supported by '953 patent and accepts the parties' stipulated constructions for the purposes of this case. Core Optical Techs., LLC v. Ciena Corp., No. SACV 12-1872 AG JPRX, 2013 WL 8719137, at *5 (C.D. Cal. Oct. 25, 2013) (accepting parties' claim construction stipulation as binding where "there is adequate support for agreed construction" and "parties have concluded that a very general construction of [the term] will suffice for this case").[2]

### B. Disputed Terms

The parties disagree as to the meaning of the term "alkyl" in Claims 1, 2 and 9 and the term "heteroaryl" in Claim 1 and ask the Court to construe these terms.

### C. "Alkyl"

| Enanta's Proposed Construction | Pfizer's Proposed Construction |
|---|---|
| The term "alkyl" means saturated, straight- or branched-chain hydrocarbon radicals. "$C_1$-$C_4$ alkyl," "$C_1$-$C_6$ alkyl," "$C_1$-$C_8$ alkyl," "$C_2$-$C_{12}$ alkyl," "$C_2$-$C_4$ alkyl," or "$C_3$-$C_6$ alkyl," refer to alkyl groups containing from one to four, one to six, one to eight, one to twelve, 2 to 4 and 3 to 6 carbon atoms respectively. Examples of $C_1$-$C_8$ alkyl radicals include, but are not limited to, methyl, ethyl, propyl, isopropyl, *n*-butyl, *tert*butyl, neopentyl, n-hexyl, heptyl and octyl radicals." | The term "alkyl" means saturated, straight- or branched-chain hydrocarbon radicals. |

The Court turns first to the language of the claims and the specification. Claim 1 of the '953 Patent claims

> A compound represented by Formula (VI-6a),

---

[2] As the Court indicated to counsel at the Markman hearing, prior to trial, the Court may ask counsel to consider an abbreviated version of the construction of "substituted" for presentation to the jury.

(VI-6a)

[Chemical structure diagram showing a compound with groups labeled A, X, NH, and various bonds in a pyrrolidine-containing structure]

> or a pharmaceutically acceptable salt thereof, wherein
> X is —CN; and
> A is optionally substituted $C_1$-$C_8$ *alkyl* or optionally substituted *heteroaryl*.

'953 Patent at col. 110 l. 39 (emphasis added). Claims 2 and 9 refer to similar compounds "wherein A is optionally substituted $C_1$-$C_8$ alkyl." '953 Patent at col. 110 l. 61–62, col. 112 l. 45–46. Under the heading "Definitions," the specification of the '953 Patent contains the following paragraph about alkyls:

> The term "alkyl" as used herein, refers to saturated, straight- or branched-chain hydrocarbon radicals. "$C_1$-$C_4$ alkyl," "$C_1$-$C_6$ alkyl," "$C_1$-$C_8$ alkyl," "$C_2$-$C_{12}$ alkyl," "$C_2$-$C_4$ alkyl," or "$C_3$-$C_6$ alkyl," refer to alkyl groups containing from one to four, one to six, one to eight, one to twelve, 2 to 4 and 3 to 6 carbon atoms respectively. Examples of $C_1$-$C_8$ alkyl radicals include, but are not limited to, methyl, ethyl, propyl, isopropyl, *n*-butyl, *tert*butyl, neopentyl, n-hexyl, heptyl and octyl radicals.

'953 Patent col. 68 l. 1–9. The parties agree that "[t]he term 'alkyl' means saturated, straight- or branched-chain hydrocarbon radicals" as it appears in the first sentence of this paragraph. D. 40-1 at 4. Pfizer would end the construction there. D. 41 at 6–10. Enanta, however, seeks to include the remainder of the paragraph quoted above. D. 42 at 10–14.

The Court agrees with the parties that Enanta created its own lexicography in the specification. The section of the specification from which the parties' proposed constructions are drawn is titled "Definitions." '953 Patent col. 67 l. 41, col. 68 l. 1; see Optima Tech Corp. v. Roxio Inc., No. SACV 03 1776 JVS ANX, 2004 WL 5029231, at *4–5 (C.D. Cal. Oct. 1, 2004) (ruling that patentee acted as lexicographer by including a definition of term under a heading labeled "Definitions"). As to the sentence beginning, "[t]he term 'alkyl' means," the Court finds that Enanta clearly set forth a definition for "alkyl." See Sinorgchem Co., Shandong v. ITC, 511 F.3d 1132, 1136 (Fed. Cir. 2007) (explaining that term "set off by quotation marks" is "often a strong indication that what follows is a definition"); Seagen Inc. v. Daiichi Sankyo Co., No. 2:20-CV-00337-JRG, 2021 WL 4168660, at *5 (E.D. Tex. Sept. 14, 2021) (concluding that patentee clearly provided lexicographical definitions in section titled "Definitions and Abbreviations" with language such as "'refers' to, 'as used herein,' or 'means,' or even 'is' in some instances").

Certainly the last two sentences are also located in the Definitions section of the '953 Patent and drafted by the patentee Enanta, but these two sentences are exemplary rather than definitional. See Dealertrack, Inc. v. Huber, 674 F.3d 1315, 1326 (Fed. Cir. 2012) (reading specification language that followed "i.e." as "exemplary" and excluding such language from term's definition); Bioverativ Inc. v. CSL Behring LLC, No. 1:17-CV-00914-RGA, 2019 WL 1276030, at *8 (D. Del. Mar. 20, 2019) (declining to include exemplary language regarding "preferred" and "additional" routes of administration into definition of "administering"); Data Engine Techs. LLC v. Int'l Bus. Machines Corp., No. 6:13-CV-858-RWS-JDL, 2015 WL 3407193, at *4 (E.D. Tex. May 27, 2015) (construing definition to include "definitional" sentence in glossary entry but excluding subsequent sentence describing purpose and effects of disputed term); Oxygenator Water Techs., Inc. v. Tennant Co., No. 20-CV-358 (ECT/HB), 2021 WL 3661587, at *8 (D. Minn.

Aug. 18, 2021) (ruling that only first sentence in specification's "Definitions" section was definitional). The latter two sentences are illustrative and do not further explain, broaden or limit the definition set forth in the first sentence, on which the parties agreed. As such, they are unlike the exemplary clause in Sinorgchem, which provided a meaningful limitation on the preceding language in the specification. Sinorgchem, 511 F.3d at 1136 & n.2.

To the extent that the middle sentence of the paragraph contains expresses a lexicographical intent, any such intent is directed towards the terms "$C_1$-$C_4$ alkyl," "$C_1$-$C_6$ alkyl," "$C_1$-$C_8$ alkyl," "$C_2$-$C_{12}$ alkyl," "$C_2$-$C_4$ alkyl" and "$C_3$-$C_6$ alkyl," which appear set off by quotation marks at beginning of the sentence. The Court has been asked to construe "alkyl," not "$C_1$-$C_8$ alkyl" or any of the other terms listed. Based on the claims' repeated references to "$C_1$-$C_8$ alkyl," the Court concludes that a $C_1$-$C_8$ alkyl is a type of alkyl and that not all alkyls are $C_1$-$C_8$ alkyls (or $C_1$-$C_4$ alkyls, or any of the other types listed). Phillips, 415 F.3d at 1314 (concluding that patent claim's reference to "steel baffles" "strongly implies that the term 'baffles' does not inherently mean objects made of steel"). This middle sentence clarifies the naming convention for types of alkyls rather than limiting or clarifying the scope of preceding sentence. See Eli Lilly & Co. v. Eagle Pharms., Inc., No. CV 17-1293- MSG, 2019 WL 1299212, at *5 (D. Del. Mar. 21, 2019) (excluding language after the phrase "for example" where provided "example is not intended to limit or alter the meaning of the preceding sentence"); Jazz Pharms., Inc. v. Roxane Lab'ys, Inc., No. CIV.A. 10-6108 ES, 2012 WL 4103880, at *4 (D.N.J. Sept. 14, 2012) (construing term to include clause from sentence containing signals of definitional intent, but excluding clause drawn from elsewhere in specification that provided a non-limiting example as "impermissibly import[ing] an example into a definition"); cf. Sinorgchem, 511 F.3d at 1136–40, n.2 (construing term to include limitation imposed by clause following "e.g.," where such a limitation was not

inconsistent with the rest of the patent and where specification suggested that patentee viewed invention as limited to "e.g." clause)

The final sentence of the paragraph lists "[e]xamples of $C_1$-$C_8$ alkyl radicals." This language thus does not define "alkyls" as a group, but instead provides nonexclusive examples of $C_1$-$C_8$ alkyls. Dealertrack, 674 F.3d at 1326 (excluding exemplary language); Seagen, 2021 WL 4168660, at *5 (declining to include language that was "more exemplary in format" in construction of disputed term); Bioverativ, 2019 WL 1276030, at *8.

Enanta does not argue that the term "saturated, straight- or branched-chain hydrocarbon radicals" is ambiguous to a person of ordinary skill in the art. See D. 42 at 11; cf. D. 41-1 (averring that a person of ordinary skill in the art would understand the definition of alkyl to be "saturated, straight- or branched-chain hydrocarbon radicals"). At most, Enanta argues that the remaining sentences would help a jury understand that a neopentyl—allegedly the chemical structure within nirmatrelvir—is a type of $C_1$-$C_8$ alkyl. D. 42 at 11–13; see D. 1 ¶ 37. If the sentences are excluded, Enanta posits that a jury will notice the omission of sentences from the specification and "wonder[] if those sentences should be disregarded." D. 42 at 13. Juror confusion is unlikely here, where the plain meaning of the additional sentences, which will still be before the jury in the form of the '953 Patent, indicate that they are directed to types of alkyls instead of the broad term "alkyl" itself. '953 Patent col. 68 l. 2–9. In the present case, the parties do not appear to meaningfully dispute the chemical structure of an alkyl. Based on a plain reading of the specification, Enanta's lexicographical intent is reflected in this construction because only the definition it provided for alkyl is in the first sentence. The Court concludes that the definition as to "alkyl" without unnecessary information as to various types and subtypes of alkyls is sufficient. See CellTrust Corp. v. ionLake, LLC, No. 19-CV-2855 (WMW/TNL), 2022 WL 4018042, at *8 (D. Minn. Sept.

2, 2022) (adopting "simple and clear" proposed construction that did not include unnecessary complexity and additional jargon).[3]

Finally, Enanta argues that Pfizer's position regarding the construction of "alkyl" (and as discussed below, "herteroaryl") is inconsistent with its agreement to construe "substituted" to include exemplary and illustrative language.  D. 47 at 11–12.  Enanta does not identify any substantive conflict between the agreed-upon definition of "substituted" and the meaning Pfizer's proposed definitions, which are drawn from the specification and included within Enanta's own proposed definitions.  Certainly the Court, when construing a disputed term, is not collaterally bound by the parties' agreement on the construction of other terms where there is no substantive inconsistency between any of the constructions.  As to the disputed constructions at issue here, the Court does not see a reason to adopt a construction that goes beyond the definition promulgated by the patentee, even if the parties' agreed-upon construction of another term includes exemplary language.  See Bioverativ, 2019 WL 1276030, at *8.

Accordingly, the Court construes "alkyl" to mean "saturated, straight- or branched-chain hydrocarbon radicals."

### D.      "Heteroaryl"

| Enanta's Proposed Construction | Pfizer's Proposed Construction |
|---|---|
| The term "heteroaryl" means a mono- or polycyclic aromatic radical having one or more ring atom selected from S, O and N; and the remaining ring atoms are carbon, wherein any N or S contained within the ring may be optionally oxidized. Heteroaryl includes, but is not limited to, pyridinyl, pyrazinyl, pyrimidinyl, | The term "heteroaryl" means a mono- or polycyclic aromatic radical having one or more ring atom selected from S, O and N; and the |

---

[3] The Court need not and does not at this time credit Pfizer's arguments that Enanta is trying to "paper over" a potential priority defect of the '953 patent by changing "$C_2$" to "$C_1$" between the '048 Application and the '953 Patent, D. 41 at 5, 14 n.6; D. 46 at 7, particularly where Enanta claims that this was a typographical error. D. 47 at 17–19.

| | |
|---|---|
| pyrrolyl, pyrazolyl, imidazolyl, thiazolyl, oxazolyl, isooxazolyl, thiadiazolyl, oxadiazolyl, thiophenyl, furanyl, quinolinyl, isoquinolinyl, benzimidazolyl, benzoxazolyl, quinoxalinyl. A polycyclic heteroaryl can comprise fused rings, covalently attached rings or a combination thereof. | remaining ring atoms are carbon, wherein any N or S contained within the ring may be optionally oxidized. |

In the section titled "Definitions" the '953 Patent further provides that,

> The term "heteroaryl" means a mono- or polycyclic aromatic radical having one or more ring atom selected from S, O and N; and the remaining ring atoms are carbon, wherein any N or S contained within the ring may be optionally oxidized. Heteroaryl includes, but is not limited to, pyridinyl, pyrazinyl, pyrimidinyl, pyrrolyl, pyrazolyl, imidazolyl, thiazolyl, oxazolyl, isooxazolyl, thiadiazolyl, oxadiazolyl, thiophenyl, furanyl, quinolinyl, isoquinolinyl, benzimidazolyl, benzoxazolyl, quinoxalinyl. A polycyclic heteroaryl can comprise fused rings, covalently attached rings or a combination thereof.

'953 Patent col. 67, l. 55. The parties agree that the first sentence of this paragraph should be included in the Court's construction. D. 40 at 4. Pfizer argues that the first sentence is sufficient, D. 41 at 16, whereas Enanta argues for inclusion of the remainder, D. 42 at 14–15.

The Court agrees with the parties that the first sentence of this paragraph expresses Enanta's intent to set forth a definition for the term "heteroaryl," defining it as a compound that may be composed of one (mono-) or many (poly-) aromatic rings. See D. 41-1 ¶¶ 36–37; Seagen, 2021 WL 4168660, at *5; Optima Tech, 2004 WL 5029231, at *5. The second sentence, which contains a non-limiting list of examples of heteroaryls, is exemplary rather than definitional, much like the second and third sentences in the paragraph regarding alkyls analyzed above. See Jazz Pharms., 2012 WL 4103880, at *4 (excluding specification language that provided example following "including, but not limited to").

The final sentence provides an explanation of the term "polycyclic" as used in the lexicographical definition of heteroaryl. See D. 41-1 ¶¶ 37, 40 (averring that final sentence describes "*how* [the] rings [in a polycyclic heteroaryl] connect to one another"). Although this

15

explanatory language may be useful, it is not "definitional" of heteroaryl and need not be included in the Court's construction. See Prism Techs. LLC v. Verisign, Inc., 512 F. Supp. 2d 174, 184 (D. Del. 2007), aff'd, 263 F. App'x 878 (Fed. Cir. 2008) (declining to adopt sentence explaining how defined term works in court's construction); Affymetrix, Inc. v. Illumina, Inc., 446 F. Supp. 2d 277, 283 (D. Del. 2006) (declining to include explanatory sentences that followed glossary definition of disputed term). To the extent that this explanation may be helpful in clarifying what molecules are considered polycyclic heteroaryls, the Court notes that this language will be presented to the jury along with the '953 Patent. In any event, it does not appear that Enanta has alleged that nirmatrelvir even contains a heteroaryl group, much less a polycyclic heteroaryl group. D. 1 ¶¶ 36–38 (alleging that nirmatrelvir contains an "optionally substituted $C_1$-$C_8$ alkyl").

Accordingly, the Court construes heteroaryl to mean "a mono- or polycyclic aromatic radical having one or more ring atom selected from S, O and N; and the remaining ring atoms are carbon, wherein any N or S contained within the ring may be optionally oxidized."

## VI.  Conclusion

For the foregoing reasons, the disputed claim terms are construed as follows:

1. The term "alkyl" means "saturated, straight- or branched-chain hydrocarbon radicals;"

2. The term "heteroaryl" means "a mono- or polycyclic aromatic radical having one or more ring atom selected from S, O and N; and the remaining ring atoms are carbon, wherein any N or S contained within the ring may be optionally oxidized."

The Court also adopts the parties' agreed-upon constructions of "substituted" and "optionally substituted" and recognizes that Pfizer reserves its indefiniteness challenge as to the phrase "A is optionally substituted $C_1$-$C_8$ alkyl." D. 40.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge