# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| ) | |
| **ENANTA PHARMACEUTICALS, INC.,** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| **v.** ) | |
| ) | **Case No. 22-cv-10967-DJC** |
| ) | |
| **PFIZER, INC.,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |
| _____ ) | |

## <u>MEMORANDUM AND ORDER</u>

**CASPER, J.**                                                                    **December 23, 2024**

## I.      Introduction

Plaintiff Enanta Pharmaceuticals, Inc., ("Enanta") alleges that Defendant Pfizer, Inc.

("Pfizer") infringes certain claims of United States Patent No. 11, 358, 953 (the "'953 Patent").

D. 1.  Pfizer filed a counterclaim seeking a declaration that the '953 Patent does not infringe (Count

I) and that the patent is invalid (Count II).  D. 22.  Enanta has moved for partial summary judgment

that Pfizer's patent infringes Claims 1, 2, 5 and 9 of the '953 Patent.  D. 266.  Pfizer filed a cross-

motion for summary judgment that the '953 Patent is invalid.  D. 269.  Enanta has also moved to

exclude certain opinions of Pfizer's proffered experts David MacMillian, D. 268, and Christine S.

Meyer, D. 267, and to exclude the opinions of Robert C. Seaton in their entirety under Fed. R.

Evid. 702.  <u>Id.</u>  Pfizer has also moved to exclude certain opinions from Enanta's proffered experts,

Steven Young, D. 264, and Brian Napper, D. 265, under Fed. R. Evid. 702.  For the reasons stated

below, the Court ALLOWS Pfizer's motion for summary judgment, D. 269, and DENIES Enanta's motion for summary judgment as moot, D. 266. In light of these rules, the Court DENIES the respective motions to exclude expert opinions, D. 264, 265, 267, 268, as moot.

## II.    Factual Background

The Court draws the following facts from the parties' statements of undisputed facts, responses to the same, and accompanying exhibits, D. 274; D. 284; D. 314; D. 317; D. 318; D. 339; D. 353; D. 354.

### A.    <u>Allegedly Infringing Patent</u>

Enanta asserts that Pfizer's orally administered coronavirus treatment, PAXLOVID and methods of using PAXLOVID to treat the coronavirus infection, infringes claims 1, 2, 5, and 9 (the "Asserted Claims") of Enanta's U.S. Patent No. 11, 358, 953 (the "'953 Patent"). D. 274 ¶ 1; D. 317 ¶ 1; D. 318 ¶ 8; D. 339 ¶ 8; D. 284 ¶ 2; D. 314 ¶ 2. Specifically, one of the active ingredients in PAXLOVID is a molecule called nirmatrelvir. D. 318 ¶ 9; D. 339 ¶ 9; D. 284 ¶ 3; D. 314 ¶ 3. Nirmatrelvir is an inhibitor of the SARS-COV-2 by targeting the main protease, 3CLpro, that the virus needs to replicate. D. 284 ¶ 4; D. 314 ¶ 4; <u>see</u> D. 354 ¶ 16. Enanta contends that nirmatrelvir contains a "—NHC(O)-$C_1$ alkyl." D. 274 ¶ 21; D. 317 ¶ 21. Enanta also contends that an "—NHC(O)-$C_1$ alkyl" is an "—NHC(O)-$C_1$-$C_{12}$-alkyl." D. 274 ¶ 22; D. 317 ¶ 22.

The FDA Label for PAXLOVID depicts the chemical structure of nirmatrelvir as the following:



D. 284 ¶ 5; D. 314 ¶ 5; see D. 285-4 at 21.  The chemical structure of nirmatrelvir contains a trifluoracetamide group.[1]  D. 284 ¶ 25; D. 314 ¶ 25.  Trifluoracetamide is a chemical group that consists of an amino group and a trifluoracetyl group.  D. 284 ¶ 27; D. 314 ¶ 27.

Pfizer first synthesized nirmatrelvir on July 22, 2020, and publicly disclosed the structural formula of nirmatrelvir at the American Chemical Society on April 6, 2021.[2]  D. 274 ¶ 44; D. 317 ¶ 44; D. 318 ¶ 10; D. 339 ¶ 10.  Pfizer's patent No. 11,351, 149 (the "149 Patent") claims priority to Pfizer's provisional patent, U.S. No. 63/073, 982 (the "982 Provisional") filed on September 3, 2020, which also discloses nirmatrelvir.  D. 274 ¶ 41; D. 317 ¶ 41.

**B.    Enanta's '953 Patent and Asserted Claims**

Enanta filed U.S. Patent No. 11, 358, 953 (the "953 Patent") on November 9, 2021 that discloses compounds that inhibit coronavirus replication activity.  D. 274 ¶ 4; D. 317 ¶ 4; see D. 273-1 at 3.  The '953 Patent issued on June 14, 2022.  D. 284 ¶ 1; D. 314 ¶ 1; see D. 273-1 at 2.

---

[1] Pfizer disputes that Enanta has repeatedly defined "trifluoracetamide" by reference to a moiety that has the following molecular formula of $C_2H_2F_3NO$ because the designated structure of nirmatrelvir does not contain two hydrogen atoms, but Pfizer does not dispute that the region identified in nirmatrelvir can be referred to as a trifluoracetamide.  D. 314 ¶ 25.

[2] Although Enanta disputes Pfizer's disclosure of nirmatrelvir at the American Chemical Society on April 6, 2021 as immaterial to the validity of the '953 patent, Enanta does not dispute that Pfizer first publicly disclosed nirmatrelvir at that meeting.  See D. 317 ¶ 44.

      1.    *Claim 1*

Claim 1 of the '953 Patent recites:

A compound represented by Formula (VI-6a),



(VI-6a)

or a pharmaceutically acceptable salt thereof, wherein
X is —CN; and
A is optionally substituted $C_1$-$C_8$ alkyl or optionally substituted heteroaryl.

D. 274 ¶ 2; D. 317 ¶ 2; D. 318 ¶ 1; D. 339 ¶ 1; <u>see</u> D. 273-1 at 59.  Claims 2, 5, and 9 of the '953 Patent all depend from Claim 1.  D. 274 ¶ 3; D. 317 ¶ 3.

      2.    *Claim 2*

Claim 2 of the '953 Patent recites: "[t]he compound of claim 1 wherein A is optionally substituted $C_1$-$C_8$ alkyl."  D. 318 ¶ 2; D. 339 ¶ 2; <u>see</u> D. 273-1 at 59; D. 274 ¶ 26; D. 317 ¶ 26.

3.    *Claim 5*

Claim 5 of the '953 Patent recites:

The compound of claim 1 which is represented by Formula (X-e),



(X-e)

or a pharmaceutically acceptable salt thereof, wherein A and X are as defined in claim 1.

D. 318 ¶ 3; D. 339 ¶ 3; see D. 273-1 at 60.

4.    *Claim 9*

Claim 9 of the '953 Patent recites: "[t]he compound of claim 5 wherein A is optionally substituted $C_1$-$C_8$ alkyl."  D. 318 ¶ 6; D. 339 ¶ 6; see D. 273-1 at 60.

5.    *Patent '953 Definitions*

Patent '953 included a definition of the term "alkyl" which was defined as the following:

The term "alkyl" as used herein, refers to saturated, straight- or branched-chain hydrocarbon radicals. "$C_1$-$C_4$ alkyl," "$C_1$-$C_6$ alkyl," "$C_1$-$C_8$ alkyl," "$C_2$-$C_{12}$ alkyl," "$C_2$-$C_4$ alkyl," or "$C_3$-$C_6$ alkyl," refer to alkyl groups containing from one to four, one to six, one to eight, one to twelve, 2 to 4 and 3 to 6 carbon atoms respectively. Examples of $C_1$-$C_8$ alkyl radicals include, but are not limited to, methyl, ethyl, propyl, isopropyl, n-butyl, tert-butyl, neopentyl, n-hexyl, heptyl and octyl radicals.

D. 274 ¶ 17; D. 317 ¶ 17; see D. 273-1 at 38.

The '953 Patent also includes the definition of the term "substituted" defined as:

The term "substituted" refers to substitution by independent replacement of one, two, or three or more of the hydrogen atoms with substituents including, but not limited to, —F, —Cl, —Br, —I, —OH, $C_1$-$C_{12}$-alkyl; $C_2$-$C_{12}$-alkenyl, $C_2$-$C_{12}$-alkynyl, —$C_3$-$C_{12}$-cycloalkyl, protected hydroxy, —$NO_2$, —$N_3$, —CN, —$NH_2$, protected amino, oxo, thioxo, —NH—$C_1$-$C_{12}$-alkyl, —NH—$C_2$-$C_8$-alkenyl,—NH—$C_2$-$C_8$-alkynyl, —NH—$C_3$-$C_{12}$-cycloalkyl, —NH-aryl, —NH-heteroaryl, —NH— heterocycloalkyl, -dialkylamino, -diarylamino, -diheteroarylamino,—O—$C_1$-$C_{12}$-alkyl, —O—$C_2$-$C_8$-alkenyl, —O—$C_2$-$C_8$-alkynyl, —O—$C_3$-$C_{12}$-cycloalkyl, —O-aryl, —O-heteroaryl, —O— heterocycloalkyl, —C(O)—$C_1$-$C_{12}$-alkyl, —C(O)—$C_2$-$C_8$-alkenyl, —C(O)—$C_2$-$C_8$-alkynyl, —C(O)—$C_3$-$C_{12}$-cycloalkyl, —C(O)-aryl, —C(O)-heteroaryl, —C(O)-heterocycloalkyl, — $CONH_2$, —CONH—$C_1$-$C_{12}$-alkyl, —CONH—$C_2$-$C_8$-alkenyl, —CONH—$C_2$-$C_8$-alkynyl, —CONH—$C_3$-$C_{12}$-cycloalkyl, —CONH-aryl, —CONH-heteroaryl, — CONH-heterocycloalkyl, —$OCO_2$—$C_1$-$C_{12}$-alkyl, —$OCO_2$—$C_2$-$C_8$-alkenyl, — $OCO_2$—$C_2$-$C_8$-alkynyl, —$OCO_2$—$C_3$-$C_{12}$-cycloalkyl, —$OCO_2$-aryl, —$OCO_2$- heteroaryl, —$OCO_2$-heterocycloalkyl, —$CO_2$—$C_1$-$C_{12}$ alkyl, —$CO_2$—$C_2$-$C_8$ alkenyl, — $CO_2$—$C_2$-$C_8$ alkynyl, $CO_2$—$C_3$-$C_{12}$-cycloalkyl, —$CO_2$-aryl, $CO_2$- heteroaryl, $CO_2$-heterocycloalkyl, —$OCONH_2$, —OCONH—$C_1$-$C_{12}$-alkyl, —OCONH—$C_2$-$C_8$-alkenyl, —OCONH—$C_2$-$C_8$-alkynyl, —OCONH—$C_3$-$C_{12}$-cycloalkyl, — OCONH-aryl, —OCONH-heteroaryl, —OCONH-heterocyclo- alkyl, — NHC(O)H, —NHC(O)—$C_1$-$C_{12}$-alkyl, —NHC(O)—$C_2$-$C_8$-alkenyl,—NHC(O)— $C_2$-$C_8$-alkynyl, —NHC(O)—$C_3$-$C_{12}$-cycloalkyl, —NHC(O)-aryl,—NHC(O)- heteroaryl, —NHC(O)-heterocyclo-alkyl, —$NHCO_2$—$C_1$-$C_{12}$-alkyl,—$NHCO_2$— $C_2$-$C_8$-alkenyl, —$NHCO_2$—$C_2$-$C_8$-alkynyl, —$NHCO_2$—$C_3$-$C_{12}$-cycloalkyl, — $NHCO_2$-aryl, —$NHCO_2$-heteroaryl, —$NHCO_2$-heterocycloalkyl,—NHC(O)$NH_2$, —NHC(O)NH—$C_1$-$C_{12}$-alkyl, —NHC(O)NH—$C_2$-$C_8$-alkenyl,—NHC(O)NH— $C_2$-$C_8$-alkynyl, —NHC(O)NH—$C_3$-$C_{12}$-cycloalkyl,—NHC(O)NH-aryl, — NHC(O)NH-heteroaryl, —NHC(O)NH-heterocycloalkyl, NHC(S)$NH_2$, NHC(S)NH—$C_1$-$C_{12}$-alkyl, —NHC(S)NH—$C_2$-$C_8$-alkenyl,—NHC(S)NH—$C_2$- $C_8$-alkynyl, —NHC(S)NH—$C_3$-$C_{12}$-cycloalkyl,—NHC(S)NH-aryl, — NHC(S)NH-heteroaryl, —NHC(S)NH— heterocycloalkyl,—NHC(NH)$NH_2$, — NHC(NH)NH—$C_1$-$C_{12}$-alkyl, —NHC(NH)NH—$C_2$-$C_8$-alkenyl, — NHC(NH)NH—$C_2$-$C_8$-alkynyl, —NHC(NH)NH—$C_3$-$C_{12}$-cycloalkyl,— NHC(NH)NH-aryl, —NHC(NH)NH-heteroaryl, —NHC(NH)NH- heterocycloalkyl, —NHC(NH)—$C_1$-$C_{12}$-alkyl, —NHC(NH)—$C_2$-$C_8$-alkenyl,— NHC(NH)—$C_2$-$C_8$-alkynyl, —NHC(NH)—$C_3$-$C_{12}$-cycloalkyl, —NHC(NH)-aryl, —NHC(NH)-heteroaryl, —NHC(NH)-heterocycloalkyl, —C(NH)NH—$C_1$- $C_{12}$-alkyl, —C(NH)NH—$C_2$-$C_8$-alkenyl, —C(NH)NH—$C_2$-$C_8$-alkynyl, — C(NH)NH—$C_3$-$C_{12}$-cycloalkyl, —C(NH)NH-aryl, —C(NH)NH-heteroaryl,— C(NH)NH-heterocycloalkyl, —S(O)—$C_1$-$C_{12}$-alkyl, —S(O)—$C_2$-$C_8$-alkenyl,— S(O)—$C_2$-$C_8$-alkynyl, —S(O)—$C_3$-$C_{12}$-cycloalkyl, —S(O)-aryl, —S(O)- heteroaryl, —S(O)-heterocycloalkyl, —$SO_2NH_2$, —$SO_2$NH—$C_1$-$C_2$-alkyl,— $SO_2$NH—$C_2$-$C_8$-alkenyl, —$SO_2$NH—$C_2$-$C_8$-alkynyl, —$SO_2$NH—$C_3$-$C_{12}$-

cycloalkyl, —$SO_2NH$-aryl, —$SO_2NH$-heteroaryl, —$SO_2NH$-heterocycloalkyl,—$NHSO_2$—$C_1$-$C_{12}$-alkyl, —$NHSO_2$—$C_2$-$C_8$-alkenyl, —$NHSO_2$—$C_2$-$C_8$-alkynyl,—$NHSO_2$—$C_3$-$C_{12}$-cycloalkyl, —$NHSO_2$-aryl, —$NHSO_2$-heteroaryl, —$NHSO_2$-heterocycloalkyl, —$CH_2NH_2$, —$CH_2SO_2CH_3$, -aryl, -arylalkyl, -heteroaryl,-heteroarylalkyl, -heterocycloalkyl, —$C_3$-$C_{12}$-cycloalkyl, polyalkoxyalkyl, polyalkoxy, -methoxymethoxy, -methoxyethoxy, —SH, —S—$C_1$-$C_{12}$-alkyl, —S—$C_2$-$C_8$-alkenyl, —S—$C_2$-$C_8$-alkynyl, —S—$C_3$-$C_{12}$-cycloalkyl, —S-aryl, —S-heteroaryl, —S-heterocycloalkyl, or methylthio-methyl. In certain embodiments, the substituents are independently selected from halo, preferably Cl and F; $C_1$-$C_4$-alkyl, preferably methyl and ethyl; halo-$C_1$-$C_4$-alkyl, such as fluoromethyl, difluoromethyl, and trifluoromethyl; $C_2$-$C_4$-alkenyl; halo-$C_2$-$C_4$-alkenyl; $C_3$-$C_6$-cycloalkyl, such as cyclopropyl; $C_1$-$C_4$-alkoxy, such as methoxy and ethoxy; halo-$C_1$-$C_4$-alkoxy, such as fluoromethoxy, difluoromethoxy, and trifluoromethoxy,—CN; —OH; $NH_2$; $C_1$-$C_4$-alkylamino; di($C_1$-$C_4$-alkyl)amino; and N02. It is understood that the aryls, heteroaryls, alkyls, and the like can be further substituted. In some cases, each substituent in a substituted moiety is additionally optionally substituted with one or more groups, each group being independently selected from $C_1$-$C_4$-alkyl; —$CF_3$, —$OCH_3$, —$OCF_3$, —F, —Cl, —Br, —I, — OH, —$NO_2$, —CN, and —$NH_2$. Preferably, a substituted alkyl group is substituted with one or more halogen atoms, more preferably one or more fluorine or chlorine atoms.

D. 274 ¶ 11; D. 317 ¶ 11; D. 318 ¶ 48; D. 339 ¶ 48; <u>see</u> D. 273-1 at 39.

### C.    <u>Enanta's '953 Patent Claimed the Benefit of a Prior Provisional Application</u>

The '953 Patent claimed priority to several patents including Enanta's U.S. Provisional Patent Application No. 63/054,048 (the "'048 Provisional") filed on July 20, 2020.  D. 274 ¶ 4; D. 317 ¶ 4; D. 318 ¶¶ 12, 26; D. 339 ¶¶ 12, 26.  The '048 Provisional stated that it covered an invention which "relates to compounds and methods of inhibiting coronavirus replication activity by contacting the 3C-Like protease (sometimes referred to as '3CLpro,' 'Main protease,' or 'Mpro') with a therapeutically effective amount of a 3C-Like protease inhibitor."  D. 318 ¶ 54; D. 339 ¶ 54; <u>see</u> D. 273-2 at 12.

1.    *Formula (I)*

The '048 Provisional describes compounds represented by "Formula (I)" and multiple sub-genuses of Formula (I).[3]   D. 274 ¶ 6; D. 317 ¶ 6; D. 318 ¶ 55; D. 339 ¶ 55.  Formula (I) is depicted in the '048 Provisional as follows:



D. 274 ¶ 6; D. 317 ¶ 6; D. 318 ¶ 55; D. 339 ¶ 55; <u>see</u> D. 273-2 at 13.  Formula (I) includes variables which are labeled "A," "L1," "L2," "Q" and "X."  D. 274 ¶¶ 6, 25; D. 317 ¶¶ 6, 25; D. 318 ¶ 56; D. 339 ¶ 56.  The '048 Provisional defines the variable "A" in Formula (I) as follows:

A is selected from:

1)   Optionally substituted $-C_1$-$C_8$ alkyl;

2)   Optionally substituted $-C_3$-$C_{12}$ cycloalkyl;

3)   Optionally substituted 3- to 12-membered heterocycloalkyl;

4)   Optionally substituted aryl, and

5)   Optionally substituted heteroaryl;

D. 274 ¶ 7; D. 317 ¶ 7; D. 318 ¶ 57; D. 339 ¶ 57; <u>see</u> D. 273-2 at 13.  The '048 Provisional also defines the variable "X" in Formula (I) as:  "X is optionally substituted $C_1$-$C_6$, -CN, -C(O)$R_{15}$, -

---

[3] Pfizer disputes this fact to the extent that it implies that Enanta's disclosure of Formula (I) complies with the written description requirement of 35 U.S.C. § 112, but does not dispute that the '048 Provisional discloses a core structure represented by Formula (I).  D. 339 ¶ 55.

C(O)NR$_{13}$R$_{14}$, or C(O)C(O)NR$_{13}$R$_{14}$."  D. 274 ¶ 8; D. 317 ¶ 8; D. 318 ¶ 58; D. 339 ¶ 58; see D.

273-2 at 14.

2.    *Formula (VI-6a)*

The '048 Provisional discloses a sub-genus of Formula (I) represented by "Formula (VI-

6a).  D. 318 ¶ 59; D. 339 ¶ 59.  Formula (VI-6a) is depicted as follows:



**(VI-6a)**

D. 318 ¶ 59; D. 339 ¶ 59.  As disclosed, Formula (VI-6a) also contains variables "A" and "X," as

previously defined in the '048 Provisional.  D. 318 ¶ 60; D. 339 ¶ 60; see D. 274 ¶ 26; D. 317 ¶

26.

3.    *Formula (X-e)*

The '048 Provisional also discloses a sub-genus of Formula (VI-6a) represented as Formula

(X-e), which also has variables "X" and "A" as previously defined in the application.  D. 318 ¶ 61;

D. 339 ¶ 61; see D. 274 ¶ 26; D. 317 ¶ 26.  The '048 Provisional discloses Formula (X-e) as

follows:

9

(X-e)

D. 318 ¶ 61; D. 339 ¶ 61; see D. 273-2 at 35.

### 4.  Definitions

The '048 Provisional also included a definition of the term "alkyl" which was defined as:

The term "alkyl" as used herein, refers to saturated, straight- or branched-chain hydrocarbon radicals. "$C_1$-$C_4$ alkyl," "$C_1$-$C_6$ alkyl," "$C_1$-$C_8$ alkyl," "$C_2$-$C_{12}$ alkyl," "$C_2$-$C_4$ alkyl," or "$C_3$-$C_6$ alkyl," refer to alkyl groups containing from one to four, one to six, one to eight, one to twelve, 2 to 4 and 3 to 6 carbon atoms respectively. Examples of $C_1$-$C_8$ alkyl radicals include, but are not limited to, methyl, ethyl, propyl, isopropyl, n-butyl, tert-butyl, neopentyl, n-hexyl, heptyl and octyl radicals.

D. 274 ¶ 16; D. 317 ¶ 16; D. 318 ¶ 32; D. 339 ¶ 32; see D. 273-2 at 42.

The '048 Provisional also provides a definition of the term "substituted" as:

The term "substituted" refers to substitution by independent replacement of one, two, or three or more of the hydrogen atoms with substituents including, but not limited to, -F, -Cl, -Br, -I, -OH, $C_1$-$C_{12}$-alkyl; $C_2$-$C_{12}$-alkenyl, $C_2$-$C_{12}$-alkynyl, -$C_3$-$C_{12}$-cycloalkyl, protected hydroxy, -$NO_2$, -$N_3$, -CN, -$NH_2$, protected amino, oxo, thioxo, -NH-$C_2$-$C_{12}$-alkyl, -NH-$C_2$-$C_8$-alkenyl, -NH-$C_2$-$C_8$-alkynyl, -NH-$C_3$-$C_{12}$-cycloalkyl, -NH-aryl, -NH-heteroaryl, -NHheterocycloalkyl,-dialkylamino, -diarylamino, -diheteroarylamino, -O-$C_2$-$C_{12}$-alkyl, -O-$C_2$-$C_8$-alkenyl, -O-$C_2$-$C_8$-alkynyl, -$OC_3$-$C_{12}$-cycloalkyl, -O-aryl, -O-heteroaryl, -O-heterocycloalkyl,-C(O)-$C_2$-$C_{12}$-alkyl, -C(O)-$C_2$-$C_8$-alkenyl, -C(O)-$C_2$-$C_8$-alkynyl,-C(O)-$C_3$-$C_{12}$-cycloalkyl, -C(O)-aryl, -C(O)-heteroaryl,-C(O)-heterocycloalkyl, -$CONH_2$, -CONH-$C_2$-$C_{12}$-alkyl, -CONH-$C_2$-$C_8$-alkenyl, -CONH-$C_2$-$C_8$-alkynyl, -CONH-$C_3$-$C_{12}$-cycloalkyl, -CONH-aryl, -CONH-heteroaryl, -CONH-heterocycloalkyl,-$OCO_2$-$C_2$-$C_{12}$-alkyl, -$OCO_2$-$C_2$-$C_8$-alkenyl, -$OCO_2$-$C_2$-$C_8$-alkynyl, -$OCO_2$-$C_3$-$C_{12}$-cycloalkyl, -$OCO_2$-aryl, -$OCO_2$-heteroaryl,-$OCO_2$-heterocycloalkyl, -$CO_2$-$C_2$-$C_{12}$ alkyl, -$CO_2$-$C_2$-$C_8$ alkenyl, -$CO_2$-$C_2$-$C_8$ alkynyl, $CO_2$-$C_3$-$C_{12}$-cycloalkyl, -$CO_2$-aryl, $CO_2$-heteroaryl, $CO_2$-heterocyloalkyl, -$OCONH_2$, -OCONH-$C_2$-$C_{12}$-alkyl, -OCONH-$C_2$-$C_8$-

alkenyl, -OCONH-$C_2$-$C_8$-alkynyl,-OCONH-$C_3$-$C_{12}$-cycloalkyl,-OCONH-aryl, -OCONH-heteroaryl,-OCONH-heterocyclo-alkyl, -NHC(O)H, -NHC(O)-$C_2$-$C_{12}$-alkyl, -NHC(O)-$C_2$-$C_8$-alkenyl, -NHC(O)-$C_2$-$C_8$-alkynyl, -NHC(O)-$C_3$-$C_{12}$-cycloalkyl, -NHC(O)-aryl, -NHC(O)-heteroaryl, -NHC(O)-heterocyclo-alkyl, -NHCO$_2$-$C_2$-$C_{12}$-alkyl, -NHCO$_2$-$C_2$-$C_8$-alkenyl, -NHCO$_2$-$C_2$-$C_8$-alkynyl, -NHCO$_2$-$C_3$-$C_{12}$-cycloalkyl, -NHCO$_2$-aryl, -NHCO$_2$-heteroaryl, -NHCO$_2$-heterocycloalkyl, -NHC(O)NH$_2$, -NHC(O)NH-$C_2$-$C_{12}$-alkyl,-NHC(O)NH-$C_2$-$C_8$-alkenyl, -NHC(O)NH-$C_2$-$C_8$-alkynyl,-NHC(O)NH-$C_3$-$C_{12}$-cycloalkyl, -NHC(O)NHaryl,-NHC(O)NH-heteroaryl, -NHC(O)NH-heterocycloalkyl,NHC(S)NH$_2$, -NHC(S)NH-$C_2$-$C_{12}$-alkyl, -NHC(S)NH-$C_2$-$C_8$-alkenyl, -NHC(S)NH-$C_2$-$C_8$-alkynyl, -NHC(S)NH-$C_3$-$C_{12}$-cycloalkyl, -NHC(S)NH-aryl, -NHC(S)NH-heteroaryl, -NHC(S)NH-heterocycloalkyl, -NHC(NH)NH2, -NHC(NH)NH-$C_2$-C12-alkyl, -NHC(NH)NH-$C_2$-$C_8$-alkenyl, -NHC(NH)NH-$C_2$-$C_8$-alkynyl, -NHC(NH)NH-$C_3$-$C_{12}$-cycloalkyl, -NHC(NH)NHaryl, -NHC(NH)NH-heteroaryl, -NHC(NH)NH-heterocycloalkyl,-NHC(NH)-$C_2$-$C_{12}$-alkyl, -NHC(NH)-$C_2$-$C_8$-alkenyl, -NHC(NH)-$C_2$-$C_8$-alkynyl, -NHC(NH)-$C_3$-$C_{12}$-cycloalkyl,-NHC(NH)-aryl, -NHC(NH)-heteroaryl, -NHC(NH)-heterocycloalkyl, -C(NH)NH-$C_2$-$C_{12}$-alkyl, -C(NH)NH-$C_2$-$C_8$- alkenyl, -C(NH)NH-$C_2$-$C_8$-alkynyl, -C(NH)NH-$C_3$-$C_{12}$-cycloalkyl,-C(NH)NH-aryl, -C(NH)NH-heteroaryl, -C(NH)NH-heterocycloalkyl, -S(O)-$C_2$-$C_{12}$-alkyl, -S(O)-$C_2$-$C_8$-alkenyl, -S(O)-$C_2$-$C_8$-alkynyl, -S(O)-$C_3$-$C_{12}$-cycloalkyl, -S(O)-aryl, -S(O)-heteroaryl,-S(O)-heterocycloalkyl, -SO$_2$NH$_2$, -SO$_2$NH-$C_2$-$C_{12}$-alkyl,-SO$_2$NH-$C_2$-$C_8$-alkenyl, -SO$_2$NH-$C_2$-$C_8$-alkynyl, -SO$_2$NH-$C_3$-$C_{12}$-cycloalkyl, -SO$_2$NH-aryl, -SO$_2$NH-heteroaryl, -SO$_2$NH-heterocycloalkyl,-NHSO$_2$-$C_2$-$C_{12}$-alkyl, -NHSO$_2$-$C_2$-$C_8$-alkenyl, -NHSO$_2$-$C_2$-$C_8$-alkynyl, -NHSO$_2$-$C_3$-$C_{12}$-cycloalkyl, -NHSO$_2$-aryl, -NHSO$_2$-heteroaryl, -NHSO$_2$-heterocycloalkyl, -CH$_2$NH$_2$, -CH2SO2CH$_3$, -aryl, -arylalkyl, -heteroaryl, -heteroarylalkyl, -heterocycloalkyl, -$C_3$-$C_{12}$-cycloalkyl, polyalkoxyalkyl, polyalkoxy, -methoxymethoxy, -methoxyethoxy, -SH, -S$C_2$-$C_{12}$-alkyl, -S-$C_2$-$C_8$-alkenyl, -S-$C_2$-$C_8$-alkynyl, -S-$C_3$-$C_{12}$-cycloalkyl, -S-aryl, -S-heteroaryl, -S-heterocycloalkyl, or methylthiomethyl. In certain embodiments, the substituents are independently selected from halo, preferably Cl and F; $C_1$-$C_4$-alkyl, preferably methyl and ethyl; halo-$C_1$-$C_4$-alkyl, such as fluoromethyl, difluoromethyl, and trifluoromethyl; $C_2$-$C_4$-alkenyl; halo-$C_2$-$C_4$-alkenyl; $C_3$-$C_6$-cycloalkyl, such as cyclopropyl; $C_1$-$C_4$-alkoxy, such as methoxy and ethoxy; halo-$C_1$-$C_4$-alkoxy, such as fluoromethoxy, difluoromethoxy, and trifluoromethoxy, -CN; -OH; NH$_2$; $C_1$-$C_4$-alkylamino; di($C_1$-$C_4$-alkyl)amino; and NO$_2$. It is understood that the aryls, heteroaryls, alkyls, and the like can be further substituted. In some cases, each substituent in a substituted moiety is additionally optionally substituted with one or more groups, each group being independently selected from $C_1$-$C_4$-alkyl;-CF$_3$, -OCH$_3$, -OCF$_3$, -F, -Cl, -Br, -I, -OH, -NO$_2$, -CN, and -NH$_2$. Preferably, a substituted alkyl group is substituted with one or more halogen atoms, more preferably one or more fluorine or chlorine atoms.

D. 274 ¶ 9; D. 317 ¶ 9; D. 318 ¶ 35; D. 339 ¶ 35; see D. 273-2 at 45. The definition contained in

the '048 Provisional contains references to a "$C_2$-$C_{12}$-alkyl." D. 274 ¶ 10; D. 317 ¶ 10; see D. 273-

2 at 45.  The definition for "substituted" contained in the '953 Patent is virtually identical to the definition of "substituted" in the '048 Provisional except references to the phrase $C_2$-$C_{12}$-alkyl have been replaced in the '953 Patent by references to the phrase $C_1$-$C_{12}$-alkyl or $C_1$-$C_2$- alkyl.[4]  D. 274 ¶ 12; D. 317 ¶ 12.

## III.    Procedural History

Enanta instituted this action on June 21, 2022 asserting that Pfizer's nirmatrelvir infringes certain claims of the '953 Patent.  D. 1.  Pfizer asserted counterclaims for a declaration of noninfringement and invalidity.  D. 22.  The Court held a <u>Markman</u> hearing on April 6, 2023, D. 60, and construed certain disputed claims.  D. 102 (revising D. 70).

Enanta now has moved for partial summary judgment on its claims for infringement as to claims 1, 2, 5, and 9,[5] D. 266, and moved to exclude the testimony of Pfizer's proffered experts, David MacMillian, Christine S. Meyer, and Robert C. Seaton, pursuant to Fed. R. Evid. 702.  D. 267; D. 268.  Pfizer has also moved for summary judgment against Enanta as to invalidity, D. 269, and to exclude certain testimony of Enanta's proffered experts, Steven Young and Brian Napper, pursuant to Fed. R. Evid. 702.  D. 264; D. 265.  The Court held a motion hearing and took those matters under advisement.  D. 366.

## IV.    Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "A fact is material if it carries with it the potential to affect the

---

[4] Enanta claims that it did not introduce a $C_1$-$C_2$- alkyl and that this notation was an error introduced by the patent office.  D. 317 ¶ 12.

[5] Enanta did not move for summary judgment as to Claims 7, 8 and 10 for which it has also asserted infringement claims, D. 1 ¶ 41.

outcome of the suit under applicable law." Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000). The movant bears the burden of demonstrating the absence of a genuine issue of material fact. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-moving party may not rest on the allegations or denials in its pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but must come forward with specific admissible facts showing that there is a genuine issue for trial. Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009). "When deciding cross-motions for summary judgment, the court must consider each motion separately, drawing inferences against each movant in turn." Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997) (citation omitted).

## V.    Discussion

### A.    Pfizer's Motion for Summary Judgment on Validity of the '953 Patent

Pfizer contends that Enanta's patent is invalid because: (1) Enanta is not entitled to a priority date earlier than July 19, 2021, (2) Pfizer had disclosed nirmatrelvir before July 2021 and therefore, Enanta's '953 Patent is anticipated and/or (3) the '953 Patent and '048 Provisional do not enable the patent's claims which permit one of the claimed variable groups, "A," to be "optionally substituted $C_1$-$C_8$ alkyl." D. 273 at 6-8.

### 1.    Enanta Cannot Claim a Priority Date Earlier Than July 19, 2021

An issued patent is presumed valid. 35 U.S.C. § 282(a). "[T]he burden is on the party challenging the validity of a patent to show that it is invalid by clear and convincing evidence." Minn. Min. & Mfg. Co. v. Chemque, Inc., 303 F.3d 1294, 1301 (Fed. Cir. 2002). Consequently, "a moving party seeking to invalidate a patent at summary judgment must submit such clear and

convincing evidence of invalidity so that no reasonable jury could find otherwise." Eli Lilly Co. v. Barr Labs., Inc., 251 F.3d 955, 962 (Fed. Cir. 2001). When facts associated with a patent's invalidity are not in dispute, the court determines "whether summary judgment of invalidity is correct by applying the law to the undisputed facts." Myspace, Inc. v. GraphOn Corp., 672 F.3d 1250, 1257 (Fed. Cir. 2012) (quoting Tokai Corp. v. Easton Enters., Inc., 632 F.3d 1358, 1366 (Fed. Cir. 2011)).

For a patent to claim the benefit of an earlier-filed application, the earlier application must disclose the invention in a manner that complies with 35 U.S.C. § 112 which provides for two requirements: (1) a written description, which must allow persons of ordinary skill in the art ("POSA") to recognize that the inventor invented what is claimed and (2) enablement, meaning that the patent must teach a POSA to make and use the invention without undue experimentation. See Ariad Pharms., Inc. v. Eli Lilly & Co., 598 F.3d 1336, 1351 (Fed. Cir. 2010). "Determination of a priority date is purely a question of law if the facts underlying that determination are undisputed." Bradford Co. v. Conteyor N. Am., Inc., 603 F.3d 1262, 1268 (Fed. Cir. 2010) (citation omitted).

Pfizer asserts two independent reasons for why Enanta's '953 Patent cannot claim the benefit of the '048 Provisional filed in July 2020: (1) Enanta expanded the definition of "substituted" in the '953 Patent by introducing new matter in the form of $C_1$ alkyls in the definition of the term "substituted" and/or (2) the disclosure of a broad genus in the '048 Provisional fails to provide written description support for the narrowed genera of compounds in the '953 Patent. D. 273 at 6-7. The Court concludes that the '953 Patent does not have the benefit of the July 2020 priority on the first ground and, therefore, does not reach the second ground.

14

a)    Introduction of "New Matter" in the '953 Patent by Enanta's "Correction" in the Definition of "Substituted"

A "patent cannot claim priority to earlier applications if it includes new matter not present in those earlier disclosures." Chiron Corp. v. Genentech, Inc., 363 F.3d 1247, 1259 (Fed. Cir. 2004). The parties primarily dispute whether Enanta introduced new matter in the '953 Patent because references in the '048 Provisional definition of "substituted" to $C_2$-$C_{12}$ alkyls have been changed in the '953 Patent definition of "substituted" to $C_1$-$C_{12}$ alkyls. See D. 273 at 10-16; D. 316 at 16-19. Pfizer argues that this change was important for two reasons: (1) a basis for Enanta's infringement claim is that nirmatrelvir contains a $C_1$ alkyl and (2) the introduction of new matter precludes Enanta's priority claim to the '048 Provisional. D. 273 at 7, 11. Enanta counters that it did not introduce new matter because Enanta's changes corrected an obvious typographical error. D. 316 at 13-19.

A court can properly interpret a patent to correct an obvious error but the Court's ability to decide or correct a mistake is limited. Novo Indus., L.P. v. Micro Molds Corp., 350 F.3d 1348, 1354 (Fed. Cir. 2003). The parties disagree over the legal standard that should be applied to assess whether the change in the definition of substituted constituted a permissible correction of a typographical error. Pfizer claims that the standard is outlined in Novo Indus., L.P., which held that a district court can only correct an error in a patent when a certificate of correction has not issued when "(1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims." Novo Indus., L.P., 350 F.3d at 1354; D. 273 at 12. In Novo Indus., L.P., the Federal Circuit reasoned that a correction in a patent by a district court was inappropriate because the nature of the error was not apparent from the face of the patent and the district court was required to guess as to the intended meaning from the face of the patent. 350 F.3d at 1352,

1357-58 (recognizing that the parties had disputed the meaning of the words "a rotatable with" in a claim which did not appear in the original application and for which the plaintiff claimed was an "obvious error" that could be corrected by one of two deletions). Enanta contends that it is not asking this Court to correct a mistake because it has already corrected the typographical error in its prosecution of the '953 Patent and therefore, Novo Indus., L.P. does not apply. D. 316 at 14. Enanta argues that the correct standard is outlined in In re Oda, 443 F.2d 1201, 1201 (C.C.P.A. 1971), in which the Federal Circuit Court of Customs and Patent Appeals reversed the Patent Office Board of Appeals and allowed an applicant to correct a typographical error in a re-issuance of patent. D. 316 at 14-15 (citing Oda). In Oda, the court recognized that correcting an error in the patent or application cannot result in new matter, but not all changes to patent claims in a patent persecution constitute "new matter" and an "obvious" error could be corrected without introducing new matter. Id. at 1202-05. In Oda, the court concluded that a translation error which resulted in a change from "nitrous acid" to "nitric acid" did not constitute new matter because it was an "obvious error," in part because it was a "translation error" and not a typographical error and the error did not change the proposed claims or the description of the claims in the specification. Id. at 1205-06.

Although the parties contest which standard applies, under either standard both Novo Indus., L.P. and Oda recognize that a district court and the patent and trademark office is an appropriate body to determine whether there has been an "obvious" typographical error.[6]   See

---

[6] Although Enanta claims that determining whether an error is obvious is a factual question that should go to the jury, see D. 316 at 19, Enanta has not identified any case where a court has submitted the question of whether an error exists to a jury, and therefore, the Court concludes that whether there is an obvious error is an appropriate question for the Court to decide. See Guzik Tech. Enters., Inc. v. W. Digital Corp., No. 11-cv-03786-PSG, 2013 WL 3934892, at *27 (N.D. Cal. July 19, 2013) (granting summary judgment on infringement claims because plaintiff could not show that correction of claims were warranted and "where the error is not obvious, where the

Novo Indus., L.P., 350 F.3d at 1357 (recognizing that district courts and the patent trademark office can correct errors but a district court's ability to decide and correct errors is limited to "obvious minor typographical and clerical" errors whereas "major errors" are only subject to correction from the patent office); Oda, 443 F.2d at 1204-06 (recognizing that a patent office may permit amendments to patent applications made to cure an error that is obvious to a POSA).  As Enanta is essentially asking this Court to interpret the '048 Provisional to read as if the references to the $C_2$-$C_{12}$ alkyls were obvious typographical errors, the Court concludes that here, Oda is not applicable and Novo Indus., L.P. governs, particulary where such "correction" is at the crux of Enanta's priority and infringement contentions.[7]

As to whether the alleged "corrections" from references to $C_2$-$C_{12}$ alkyls to $C_1$-$C_{12}$ alkyls in the definition "substituted" were not obvious, minor typographical errors, Enanta primarily points to its proffered expert, Steven Young ("Young" ).  He opines that a POSA would understand that there was an obvious error by looking at the definition of the term "alkyl"  in the '048 Provisional because the definition contains an internal inconsistency between the numerical and

---

clerical error in fact can or should broaden the scope of the claim, the USPTO has the requisite expertise to engage in consideration of the correction").

[7] Enanta's reliance upon Am. Nat'l Mfg. Inc. v. Sleep No. Corp., 52 F.4th 1371, 1380 (Fed. Cir. 2022), D. 316 at 15, does not compel a different result.  In that case, the court considered whether it was appropriate for the patent board to allow defendant to propose amended claims aimed at remedying the unpatentability of its claims and concluded that a party was permitted to do so as long as the amendment did not insert new matter into the claims.  Id.  Without citing either Oda or Novo Indus., L.P., in considering a challenge to whether an error rendered a claim not enabled, the court reasoned that "the specification itself makes clear that the reference to step 168 instead of step 176 is an obvious error," particularly because "the remainder of the specification consistently and correctly" describes step 176 and so it allowed the claim amendment.  Id. at 1382. Here, allowing any "correction" would broaden the scope of the claims, which was not an issue in Sleep No. Corp.  Id. at 1380 (noting that "so long as a proposed claim amendment does not enlarge the scope of the claims, does not add new matter, and responds to a ground of unpatentability in the proceeding, the patent owner may also make additional amendments to a claim without running afoul of the relevant statutes and regulation"); see D. 338 at 8.

written descriptions of the alkyls.  D. 316 at 16-17.  In relevant part the definition of "alkyl" describes a "$C_2$-$C_{12}$ alkyl" as "refer[ring] to alkyl groups containing **one** to twelve. . . atoms respectively."   See D. 274 ¶ 16; D. 317 ¶ 16; D. 318 ¶ 32; D. 339 ¶ 32 (emphasis added).  It is undisputed, however, that the internal inconsistency in the definition of "alkyl" in the '048 Provisional was not corrected and remains in the '953 Patent.  Compare D. 273-2 at 42 with D. 273-1 at 38.  Young further contends the alleged error in the definition of "alkyl" is an obvious error because the written numbers ascend in order within the definition of alkyl  (i.e. one to four, one to six, one to eight, one to twelve) and, therefore, it would have been obvious to a POSA that "$C_2$-$C_{12}$ alkyl" was incorrect.  See D. 273-4 at 12-13.  Looking at the '048 Provisional as a whole, however, the definition of "alkenyl" also contains atom numbers that are out of order (i.e., "$C_2$-$C_8$ alkenyl," "$C_2$-$C_{12}$ alkenyl," "$C_2$-$C_4$ alkenyl," "$C_3$-$C_4$ alkenyl," or "$C_3$-$C_6$ alkenyl . . . two to eight, two to twelve, two to four, three to four or three to six carbon atoms respectively") D. 273-2 at 42, and is consistent with the definition in the '953 Patent.  D. 273-1 at 38.  Similarly, the definition of "alkynyl" in the '048 Provisional also contains atom numbers that are not in ascending order (i.e., "$C_2$-$C_8$ alkynyl," "$C_2$-$C_{12}$ alkynyl," "$C_2$-$C_4$ alkynyl," "$C_3$-$C_4$ alkynyl," or "$C_3$-$C_6$ alkynyl . . . "two to eight, two to twelve, two to four, three to four or three to six carbon atoms respectively") and is also consistent with the definition in the '953 Patent.  D. 273-1 at 38, D. 273-2 at 43.  Young concedes that neither of these definitions contained an error.  D. 273-3 at 31.  As to "$C_2$-$C_{12}$ alkyl" as "refer[ring] to alkyl groups containing **one** to twelve. . . atoms" language, Young also concedes that given the internal inconsistency, there are alternative ways that Enanta could  have fixed the description.  See D. 273-3 at 26-27.  When there are multiple ways to resolve the inconsistency, courts have held that an error is not "obvious" as the correction is subject to reasonable debate.  See, e.g., Vifor (Int'l) AG v. Mylan Lab'ys Ltd., No. 19-cv-13955 (FLW), 2021 WL 1608908, at *6 (D.

N.J. Apr. 26, 2021) (citing cases which involved typographical errors of such an obvious nature that the claim at issue was either unintelligible, or the meaning was unknown to a POSA as subject to correction, and concluding that "the [c]laim, here, does not contain such an obvious error on its face").  Contrary to Enanta's claims, therefore, the definition of "alkyl" is not conclusive in showing that alleged correction was an obvious error.

Moreover, although Young has opined that the error would "likely" be a copy paste error, Young admits that a $C_2$-$C_{12}$ alkyl is a chemically possible combination such that the error is not expressly obvious by looking at the definition of "substituted."[8]  See D. 273-4 at 13; D. 273-3 at 29 (testifying that "[c]hemically you can have a $C_2$-$C_{12}$ alkyl").  As a matter of law, this is not the type of error that courts have recognized as being so facially obvious to constitute a typographical error.[9] See, e.g., Vifor (Int'l) AG, 2021 WL 1608908, at *1, 6 (reasoning that plaintiff's claim that the stereochemistry was incorrectly written as "3(S)" rather than "3(R)" did not present an "obvious"

_____

[8] Enanta also argues that a singular reference to a $C_1$-$C_{12}$ alkyl in the definition of "substituted" as well as other references to the possibility of $C_1$ alkyls in the '048 Provisional would have indicated to a POSA that the subsequent references to $C_2$-$C_{12}$ alkyl were "obviously" erroneous.  See D. 316 at 17.  For example, Young describes how references to $C_1$-$C_6$ would indicate to POSA that references to $C_2$ should be references to $C_1$.  See D. 273-4 at 14-15.  It is not clear to the Court how these other references illustrate that the error was obvious to a POSA because the definition of "alkyl" which contains the internal consistency ("$C_2$-$C_{12}$ alkyl . . . one to twelve . . . carbon atoms"), also refers to a $C_1$-$C_6$ alkyl, D. 273-2 at 42, and as discussed above, the patent fails to conclusively show how to resolve the inconsistency.

[9] Even assuming *arguendo* that the error was an obvious typographical error, the Court would have no power to correct this type of error because the correction of the error remains subject to reasonable debate, particularly here, where the prosecution history adds ambiguity because Enanta did not correct the internal inconsistency in the definition of "alkyl."  See Bella Summit LLC v. Gamebreaker, Inc., No. 21-cv-06007JAKMAR, 2022 WL 17882138, at *7-8 (C.D. Cal. Oct. 17, 2022) (reasoning that error was obvious as it rendered an impossibility but correction of error in patent was subject to reasonable debate in part because of the repetition of the error and because plaintiff corrected the error in one place but "[p]laintiff's failure to correct the error in the disputed term" supported the determination that plaintiffs proposed correction was subject to reasonable debate).

error subject to court correction); Gilead Scis., Inc. v. Watson Lab'ys, Inc., No. 15-cv-2350 (RMB/JS), 2016 WL 1690306, at *3 (D. N. J. Apr. 26, 2016) (reasoning that plaintiff's inclusion of "hydroxyl" is not an obvious typographical error that would be known to a POSA and warrants correction and the inclusion of the term "goes precisely to the patent's scope and validity").  That is, this Court cannot say that substituting a $C_1$ for a $C_2$ alkyl is sufficiently minor that the Court even has the authority to make this correction because the parties do not dispute that if Enanta's patent only covered $C_2$ alkyls, that range would not cover nirmatrelvir as Enanta contends that nirmatrelvir contains a "—NHC(O)-$C_1$ alkyl" which is a "—NHC(O)-$C_1$-$C_{12}$-alkyl."  D. 274 ¶¶ 21-22; D. 317 ¶¶ 21-22; see Guzik Tech. Enters., Inc., 2013 WL 3934892, at *27 (reasoning that "the court cannot say that substituting 'system' for 'magnetic disc medium' is sufficiently minor that it has the authority to undertake the correction").

The Court, therefore, concludes that Enanta's changes in the '953 Patent impermissibly broadened the scope such that the '953 Patent cannot claim priority to the '048 Provisional.[10]  See Superior Fireplace Co. v. Majestic Prods. Co., 270 F.3d 1358, 1374-75 (Fed. Cir. 2001) (concluding that certification of correction was invalid because the correction from "rear wall" to "rear walls" which had the effect of broadening a claim, was not an obvious error and was therefore not correctable).[11]

---

[10] Enanta contends that even if references to "$C_2$-$C_{12}$ alkyl" in the definition of "substituted" was not a typographical error, it did not introduce new matter when it made that "correction" in the '953 Patent because in the '048 Provisional the term "substituted" refers to "substituents including, but not limited to" that included substituents not expressly listed in the enumerated list, one of which includes a $C_1$-$C_{12}$ alkyl.  See D. 316 at 18.  The Court disagrees that Enanta can rely upon the "including but not limited to" language to expand the scope of its claims because the claims and specifications "serve an important public notice function" and Enanta's construction would permit an impermissible broadening of its claims.  See Parallel Networks Licensing, LLC v. Int'l Bus. Machines Corp., 83 F. Supp. 3d 571, 576 (D. Del. 2015).

[11] Based upon the Court's holding, the Court need not consider Pfizer's other ground for claiming that Enanta's priority date fails (i.e., its challenge to the written description support), D.

**B.**    **Enanta's '953 Patent is Anticipated**

Pfizer contends that because Enanta is not entitled to a priority date earlier than July 19, 2021, the '953 Patent is invalid for anticipation where Pfizer's '149 Patent, Pfizer's presentation and talk at the ACS Spring 2021 Meeting and press reports of Pfizer's presentation disclose nirmatrelvir prior to this date.  D. 273 at 23.  The Court agrees.  "A patent is invalid for anticipation if a single prior art reference discloses each and every limitation of the claimed invention." Schering Corp. v. Geneva Pharm., 339 F.3d 1373, 1377 (Fed. Cir. 2003).  A patent is invalid for anticipation  if the invention was known or used by others or patented or described in a printed publication.  See 35 U.S.C. §§ 102(a)(1), (2)  "For prior art to anticipate under 35 U.S.C. § 102(a) because it is known, the knowledge must be publicly accessible" previously "and it must be sufficient to enable one with ordinary skill in the art to practice the invention."  Minn. Min. & Mfg. Co., 303 F.3d at 1301 (internal quotation marks and citation omitted).  "Anticipation is a question of fact, including whether or not an element is inherent in the prior art."  Atlas Powder Co. v. Ireco, Inc., 190 F.3d 1342, 1346 (Fed. Cir. 1999).

Here, as discussed above, Enanta is not entitled to a priority date based on the '048 Provisional.  It is undisputed that Pfizer publicly disclosed the structural formula of nirmatrelvir at the American Chemical Society on April 6, 2021, and Pfizer's '149 Patent, filed on June 7, 2022 claimed priority to the U.S. Provisional Patent No. 63/073,982 filed on September 3, 2020, which disclosed nirmatrelvir. D. 274 ¶¶ 41, 44; D. 317 ¶¶ 41, 44; D. 318 ¶ 10; D. 339 ¶ 10.  Further there were press reports and social media posts which also disclosed nirmatrelvir in April 2021.  See D. 273-16; D. 273-17; D. 273-18.  Even assuming *arguendo*, that Pfizer's nirmatrelvir in Paxlovid

---

273 at 16-22, because "if granted, [it] would result in the same relief."  Lipocine Inc., 541 F. Supp. 3d at 468.

infringed the claims of the '953 Patent as Enanta has alleged, Pfizer has shown by clear and convincing evidence that the '953 Patent, which was only filed on November 9, 2021, D. 274 ¶ 4; D. 317 ¶ 4; see D. 273-1 at 3, was anticipated by the public disclosure of nirmatrelvir months earlier and Pfizer's patent which claimed the benefit of an earlier application. See Empire Tech. Grp. Ltd. v. Light & Wonder, Inc., 705 F. Supp. 3d 1181, 1184-85 (D. Nev. 2023) (reasoning that plaintiff's allegations that the accused product infringed the patent was sufficient to prove anticipation and defendant's public display and demonstration of the accused product at a conference constituted a prior public use that invalidated plaintiff's patent); Gamevice, Inc. v. Nintendo Co., No. 18-cv-01942-RS, 2023 WL 7194871, at *2 (N.D. Cal. Oct. 31, 2023) (recognizing that "the patentee's own allegations of infringement may be relied upon by an accused infringer to establish their prima facie defense of invalidity by anticipation"). The '953 Patent is, therefore, invalid for anticipation and summary judgment in Pfizer's favor on the grounds of invalidity.[12]

## VI.    Conclusion

For the foregoing reasons, the Court ALLOWS Pfizer's motion for summary judgment as to invalidity, D. 269, and DENIES Enanta's motion for summary judgment as to infringement as moot, D. 266.  In light of these rulings, the Court DENIES the parties' respective motions to exclude expert testimony, D. 264, 265, 267, 268, as moot.

So Ordered.

/s Denise J. Casper

---

[12] Given the Court's conclusion, the Court does not reach Pfizer's alternative basis for invalidity (i.e., enablement), D. 273 at 24-25, or the merits of Enanta's partial motion for summary judgment on infringement, D. 266, because it need not do so given the allowance of summary judgment on invalidity based upon anticipation.  See Lipocine Inc., 541 F. Supp. 3d at 468; see WBIP, LLC v. Kohler Co., 965 F. Supp. 2d 170, 174 (D. Mass. 2013) (recognizing that "an invalid patent cannot be infringed").

United States District Judge